EDWARD R. ERWIN, III AND SYLVIA ERWIN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Erwin v. Commissioner
Docket Nos. 13035-85; 13207-85; 13208-85.
United States Tax Court
T.C. Memo 1989-80; 1989 Tax Ct. Memo LEXIS 84; 56 T.C.M. (CCH) 1343; T.C.M. (RIA) 89080; February 27, 1989. Charles B. Sklar, for the petitioners. Stevens E. Moore, for the respondent. SWIFT
MEMORANDUM *85 FINDINGS OF FACT AND OPINION SWIFT, Judge: In timely statutory notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioners
Docket No.
Year
Deficiency
Edward R. and
13035-85
1980
$    119.60
Sylvia Erwin
1981
28,204.42
1982
5,388.12
Stanley H. and
13207-85
1981
20,344.00
Rita Jackson
1982
2,546.00
F. Barry and
13208-85
1981
22,016.00
Patricia M. Marionneaux
1982
9,803.00
After concessions, the issue for decision is whether petitioner-shareholders may increase their tax bases in stock in a subchapter S corporation by the amount of the corporation's debt personally guaranteed by the shareholders. FINDINGS OF FACT Many of the facts have been stipulated and are so found. Petitioners Edward R. and Sylvia Erwin are husband and wife, and timely filed joint Federal income tax returns for the years 1980, 1981, and 1982. Petitioners Stanley H. and Rita Jackson are husband and wife, and timely filed joint Federal income tax returns for the years 1981 and 1982. Petitioners F. Barry and Patricia M. Marionneaux are husband and wife, and timely filed joint Federal *86 income tax returns for the years 1981 and 1982. All petitioners resided in Plaquemine, Louisiana, at the time they filed their petitions in this case. Hereinafter, all references to "petitioner[s]" will be to Edward R. Erwin, III, Stanley H. Jackson, II, and/or F. Barry Marionneaux. In 1980, petitioners and their associate Don Antie formed Master Marine, Inc., a Louisiana corporation that elected to be treated as a "small business corporation" under subchapter S of the Code. Master Marine was organized to acquire and operate a pushboat, which is similar to a tugboat. Master Marine's pushboat was to be used specifically to move chemical materials through the local waterways of Louisiana. Petitioner F. Barry Marionneaux is the president of Master Marine. Petitioner Edward R. Erwin, III serves as the corporation's secretary-treasurer. Upon formation of Master Marine, petitioners and Mr. Antie each contributed $ 13,500 in cash to the capital of the corporation. In return, each received 25 shares of the corporation's 100 shares of stock. On November 22, 1980, the board of directors of Master Marine agreed to redeem the 25 shares of stock owned by Mr. Antie. Thereafter, each *87 petitioner owned 25 shares of stock in Master Marine, or one-third of the issued and outstanding shares. In 1980 Master Marine entered into an agreement with a Louisiana boat builder for the construction of a 65-foot, 1,200-horsepower pushboat for the purchase price of $ 592,500. The purchase price was to be paid by a $ 50,000 cash downpayment with the balance of $ 542,500 due upon completion of the boat. In order to pay for the pushboat, Master Marine obtained a loan in the amount of $ 550,000 from Westinghouse Credit Corporation ("Westinghouse"). To evidence the loan, Master Marine issued a promissory note dated November 21, 1980, in favor of Westinghouse in the amount of $ 550,000. The note bore interest at a variable rate over prime and was payable in 96 monthly installments beginning on January 1, 1981. The entire proceeds of the promissory note were paid to the boat builder upon completion of the pushboat. [2]
Mr. Marionneaux executed the promissory note to Westinghouse on behalf of Master Marine. *88 Each petitioner and Mr. Antie also signed the note as co-makers. Master Marine issued a preferred maritime mortgage in the amount of $ 550,000 in favor of Westinghouse on the pushboat. The mortgage provided that in the event of default, Westinghouse could (1) declare payable the principal of the note and all accrued interest, (2) recover judgment for and collect out of any property of Master Marine all amounts due under the note, and/or (3) seize the pushboat from Master Marine. Westinghouse also required Master Marine to obtain property insurance and mortgage insurance on the pushboat. As part of Westinghouse's procedures for reviewing and approving the $ 550,000 loan to Master Marine, Westinghouse required each petitioner and Mr. Antie to submit personal financial statements to Westinghouse. Westinghouse approved the creditworthiness of petitioners and of Mr. Antie in connection with the loan to Master Marine. During 1980 and 1981, Master Marine also obtained a number of loans from Citizens Bank & Trust Co. ("Citizens Bank") in Plaquemine, Louisiana. The cumulative total of these loans was $ 250,000. Each of the loans was payable on demand and bore interest at a stated *89 rate over Citizen Bank's commercial prime lending rate. As security for these loans, petitioners pledged assets and signed the respective promissory notes as either co-makers or sureties. The loan proceeds were deposited into Master Marine's checking account and were used to fund current operations of Master Marine. In the years before Master Marine obtained loans from Citizens Bank, each petitioner had engaged in numerous transactions with Citizens Bank and had dealt with its officers both professionally and personally. Mr. Marionneaux obtained all loans for the operation of his law office from Citizens Bank, and he financed two homes through the bank. Mr. Jackson and Mr. Erwin began banking with Citizens Bank in the early 1960's. Mr. Jackson borrowed money on several occasions from Citizens Bank for personal and business purposes, and Mr. Erwin dealt with the bank frequently with regard to various matters. Before approving the loans to Master Marine, Citizens Bank also reviewed petitioners' personal financial statements. Westinghouse and Citizens Bank expected repayment of the loans from revenues produced through the successful operation of Master Marine's business. During *90 the years in issue, Master Marine timely paid the principal and interest due on the loans from Westinghouse. Master Marine made payments only of interest due on the loans from Citizens Bank. During 1980, 1981, and 1982, no payments of principal or interest were made by petitioners on any of the above loans. Neither petitioners nor Master Marine reported payments made by Master Marine on the loans as constructive dividends. During the years in question, Master Marine was a thinly capitalized corporation. Master Marine's total current assets, total liabilities, and shareholders' equity at November 30, 1980, December 31, 1980, and December 31, 1981, are set forth below: Nov. 30, 1980
Dec. 31, 1980
Dec. 31, 1981
Current assets:
Cash
$    (735.48)
$   4,009.62 $  (13,671.23)
Accounts receivable
-     5.00 1,236.21 Total current assets
$    (735.48)
$   4,014.62 $  (12,435.02)
Total liabilities
*$ 620,220.16  ** $ 638,375.36  *** $  750,055.63 Shareholders' equity
20,729.50 (6,536.43)
(205,208.71)
*91 For financial and tax purposes, Master Marine reported the loans from Westinghouse and Citizens Bank as loans to Master Marine, not as loans to petitioners. On its Federal corporate income tax returns, Master Marine reported total income, depreciation, other deductions, and net operating losses in the following amounts: 1980
1981
1982
Total income
$  18,000.00 $  286,559.38 $ 368,507.90 Depreciation
5,986.88 72,037.61 72,295.03 Other deductions
74,949.55 429,548.45 365,278.53 Net operating loss
$ (62,936.43)
$ (215,026.68)
$ (69,065.66)
In September of 1984, Master Marine and petitioners entered into a series of transactions in order to restructure the indebtedness of Master Marine. Petitioners borrowed $ 656,981.47 from Citizens Bank, executing a promissory note in that amount in favor of Citizens Bank. The note was payable in 120 monthly installments in the amount of $ 10,900 and bore interest at 1-1/2 percent over the prime lending rate of Citizens Bank. The loan was secured by personal assets of petitioners. Petitioners then loaned the $ 656,981.47 to Master Marine. Master Marine executed separate promissory *92 notes each in the amount of $ 218,993.82 to petitioners Edward R. Erwin, III, F. Barry Marionneaux, and Stanley H. Jackson, II. Each note executed by Master Marine was payable in 120 monthly installments of $ 3,633.33 and bore interest at 1-1/2 percent over the prime lending rate of Citizens Bank. The total monthly amount therefore that Master Marine owed petitioners was equal to the amount petitioners each month owed Citizens Bank (namely, $ 10,900). Master Marine utilized $ 407,161.51 of the loan proceeds from the 1984 loan to pay the outstanding balance due Westinghouse on the 1980 maritime mortgage. Although the record is unclear, apparently Master Marine used a portion or the remaining balance of the proceeds from the 1984 loan to pay off the 1980 and 1981 loans due Citizens Bank. Master Marine then granted to petitioners a mortgage on the pushboat in the amount of $ 900,000 (the estimated fair market value of the boat) as security for the loan from petitioners. Petitioners in turn granted a mortgage on the pushboat to Citizens Bank as additional collateral for the 1984 $ 656,981.47 loan received from Citizens Bank. During 1981 and 1982, each petitioner apparently also *93 made a number of small, direct loans to Master Marine. The record does not disclose the terms of those loans. Petitioners' bases in their stock in Master Marine, and petitioners' bases in Master Marine's direct loan indebtedness to them as of December 31, 1980, 1981, and 1982, were as follows: Dec. 31, 1980
Dec. 31, 1981
Dec. 31, 1982
Petitioner
Basis in Stock
Edward R. Erwin, III
$ 14,100
-0-
-0-
Stanley H. Jackson, II
14,100
-0-
-0-
F. Barry Marionneaux
14,000
-0-
-0-
Basis in Direct Indebtedness from Master Marine
Edward R. Erwin, III
$ -0-
$ 2,000
$ 17,500
Stanley H. Jackson, II
-0-
1,000
7,500
F. Barry Marionneaux
-0-
1,500
10,000
Petitioners' bases in their stock as of December 31, 1980, reflect additional capital contributions made during 1980 by petitioners Edward R. Erwin, III and Stanley H. Jackson, II in the amount of $ 600 each, and an additional contribution by petitioner F. Barry Marionneaux in the amount of $ 500. On their joint Federal income tax returns, petitioners deducted the following losses with respect to their interests in Master Marine: Petitioners
Year
Ordinary Loss
Edward R. and
1980
$ 20,978.81
Sylvia Erwin
1981
71,675.56
1982
23,021.89
Stanley H. and
1980
$ 20,979.00
Rita Jackson
1981
71,676.00
1982
23,022.00
F. Barry and
1980
20,978.81
Patricia Marionneaux
1981
71,676.00
1982
23,022.00
*94 Respondent disallowed the losses claimed in 1980 by petitioners Edward R. and Sylvia Erwin that were attributable to Master Marine to the extent the losses exceeded $ 14,100. Respondent, however, did not issue a notice of deficiency for 1980 to Mr. and Mrs. Marionneaux, or to Mr. and Mrs. Jackson. For 1981 and 1982, respondent disallowed the losses claimed by petitioners with respect to Master Marine's losses to the extent the losses exceeded petitioners' bases in their stock and in Master Marine's direct indebtedness to them. OPINION Under section 1374, [3] shareholders in electing small business corporations may deduct their pro rata share of net operating losses of the corporations for any taxable year. The deductions, however, are limited to the sum of the adjusted bases of the shareholders' stock in the corporations (sec. 1374(c)(2)(A)), and the adjusted bases of any indebtedness of the corporations to the shareholders (sec. 1374(c)(2)(B)). [4]
*95 Petitioners contend that Westinghouse and Citizens Bank looked primarily to petitioners and to the personal assets pledged by petitioners for repayment of the 1980 and 1981 loans at issue. Petitioners argue that the loans should be viewed as loans to petitioners, followed by capital contributions by petitioners to Master Marine of the amounts borrowed. Respondent contends that because petitioners never were called upon to repay the Westinghouse and Citizens Bank loans, petitioners are not entitled to increase their bases in their stock on account of the loans. In Estate of Leavitt v. Commissioner,90 T.C. 206 (1988), (Court reviewed), on appeal (4th Cir., July 18, 1988), we recently addressed the effect of shareholder guarantees of subchapter S debt on the shareholders' bases in their stock. We concluded that until the shareholders are called upon to pay the loans they guaranteed for the subchapter S corporation, the shareholders are not allowed to increase their bases in the corporation for purposes of section 1374. Estate of Leavitt v. Commissioner, supra at 212-218. *96 We also concluded that indirect borrowing generally does not give rise to indebtedness from a subchapter S corporation to the shareholders unless and until the shareholders pay part or all of the indebtedness. Estate of Leavitt v. Commissioner, supra at 211-212. We disagreed with the Eleventh Circuit's opinion in Selfe v. United States,778 F.2d 769 (11th Cir. 1985), that shareholders of subchapter S corporations who guarantee debt of subchapter S corporations are entitled to increase the bases of their stock under section 1374(c)(2)(A) for their share of the guaranteed debt where the shareholders can show that the lenders looked to the shareholders as the primary obligors on the debt. We stated in Estate of Leavitt that absent direct economic outlays, shareholders will not be regarded as having made equity investments in subchapter S corporations for purposes of increasing their bases under section 1374(c)(2)(A). Estate of Leavitt v. Commissioner, supra at 216. See also Calcutt v. Commissioner,91 T.C. 14, 24 (1988). *97 The facts of this case are not distinguishable from those in Estate of Leavitt, and that case controls the resolution of the issue before us. Petitioners argue that Plantation Patterns, Inc. v. Commissioner,462 F.2d 712 (5th Cir. 1972), affg. a Memorandum Opinion of this Court, requires us to apply traditional debt-equity analysis to the loans in question and that under such analysis the loans would be regarded as having been made by Westinghouse and Citizens Bank to the shareholders, followed by capital contributions of the loan proceeds by the shareholders to Master Marine. Petitioners argue further that under that approach the shareholders under section 1374(c)(2)(A) would be entitled to increase their bases in their stock of Master Marine by the amount of the capital contributions. Plantation Patterns v. Commissioner, supra, did not involve a bases question under section 1374 but interest deductions under section 163 claimed by a corporation on indebtedness that properly was regarded as indebtedness of the shareholders. In Estate of Leavitt v. Commissioner, supra at 216, we concluded that *98 the traditional debt-equity analysis does not apply to bases questions involving electing small business corporations under section 1374. We therefore are not bound to apply the debt-equity analysis of Plantation Patterns to the issue before us. If, however, a debt-equity analysis were applicable, we would conclude that the loans from Westinghouse and Citizens Bank were made to Master Marine, not to the shareholders, and that the shareholders, therefore, did not make capital contributions of the loan proceeds to Master Marine. The loan documentation consistently treats the loans as loans to Master Marine. The loans were to be repaid in the normal course of events from the business revenues of Master Marine. Upon default, the loans were to be repaid from the collateral security Master Marine gave to obtain the loans or from the mortgage insurance Master Marine obtained and paid for. See debt-equity factors set forth in Plantation Patterns v. Commissioner, supra at 718. If the shareholders under their guarantees had been required to pay delinquencies on the loans, the shareholders at that time would have been *99 entitled to increase their bases under section 1374 to the extent of their payments. The shareholders' liabilities on the loans Master Marine obtained from Westinghouse and Citizens Bank during the years in question may well have been a sine qua non for obtaining the loans, but that is not a sufficient basis for treating the loans as having been made to the shareholders, followed by contributions of the loan proceeds by the shareholders to Master Marine. For all purposes other than the computations of their tax bases, the shareholders, Master Marine, Westinghouse, and Citizens Bank regarded the loans as having been made primarily and directly from the financial institutions to Master Marine. Due to concessions, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners have been consolidated for purposes of this proceeding: Stanley H. Jackson, II and Rita Jackson, docket No. 13207-85, and F. Barry Marionneaux and Patricia M. Marionneaux, docket No. 13208-85.↩
2. The record does not explain the discrepancy between the $ 542,500 Master Marine agreed to pay and the $ 550,000 in loan proceeds apparently advanced to the boat builder.↩
*. Includes $ 550,000 loan from Westinghouse and $ 70,000 loan from Citizens Bank. ** Includes $ 547,300 balance of loan from Westinghouse and $ 90,000 loan from Citizens Bank. *** Includes $ 487,027.21 balance of loan from Westinghouse and $ 250,000 in loans from Citizens Bank.↩
3. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
4. Sec. 1374 provides, in relevant part, as follows: (c) Determination of Shareholder's Portion. -- * * * (2) Limitation. -- A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of -- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation, * * * and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation * * *.↩