875 F.2d 420
 63 A.F.T.R.2d 89-1437, 89-1 USTC P 9332
 ESTATE of Daniel LEAVITT, Deceased, Charles D. Fox, III,
Executor; Estate of Evelyn M. Leavitt, Deceased, Charles D.
Fox, III, Executor; Anthony D. Cuzzocrea; Marjorie F.
Cuzzocrea, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 88-3129.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1989.
Decided May 19, 1989.
 
 Dianne E.H. Wilcox (Nicholas C. Conte, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief), for petitioners-appellants.
 Teresa Ellen McLaughlin (Gary R. Allen, Richard Farber, Tax Div., Dept. of Justice, Washington, D.C., William E. Rose, Jr., Asst. Atty. Gen., on brief), for respondent-appellee.
 Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and TILLEY, District Judge for the Middle District of North Carolina, sitting by designation.
 MURNAGHAN, Circuit Judge:
 
 
 1
 The appellants, Anthony D. and Marjorie F. Cuzzocrea and the Estate of Daniel Leavitt, Deceased, et al., appeal the Tax Court's decision holding them liable for tax deficiencies for the tax years 1979, 1980 and 1981. Finding the appellants' arguments unpersuasive, we affirm the Tax Court.
 
 I.
 
 2
 As shareholders of VAFLA Corporation,[1] a subchapter S corporation during the years at issue, the appellants claimed deductions[2] under Sec. 1374 of the Internal Revenue Code of 1954[3] to reflect the corporation's operating losses during the three years in question.[4] The Commissioner disallowed deductions above the $10,000 bases each appellant had from their original investments.
 
 
 3
 The appellants contend, however, that the adjusted bases in their stock should be increased to reflect a $300,000 loan which VAFLA obtained from the Bank of Virginia ("Bank") on September 12, 1979, after the appellants, along with five other shareholders ("Shareholders-Guarantors"), had signed guarantee agreements whereby each agreed to be jointly and severally liable for all indebtedness of the corporation to the Bank.[5] At the time of the loan, VAFLA's liability exceeded its assets,[6] it could not meet its cash flow requirements and it had virtually no assets to use as collateral. The appellants assert that the Bank would not have lent the $300,000 without their personal guarantees.
 
 
 4
 VAFLA's financial statements and tax returns indicated that the bank loan was a loan from the Shareholders-Guarantors. Despite the representation to that effect, VAFLA made all of the loan payments, principal and interest, to the Bank. The appellants made no such payments. In addition, neither VAFLA nor the Shareholders-Guarantors treated the corporate payments on the loan as constructive income taxable to the Shareholders-Guarantors.
 
 
 5
 The appellants present the question whether the $300,000 bank loan is really, despite its form as a borrowing from the Bank, a capital contribution from the appellants to VAFLA. They contend that if the bank loan is characterized as equity, they are entitled to add a pro rata share of the $300,000 bank loan to their adjusted bases, thereby increasing the size of their operating loss deductions.[7] Implicit in the appellants' characterization of the bank loan as equity in VAFLA is a determination that the Bank lent the $300,000 to the Shareholders-Guarantors who then contributed the funds to the corporation. The appellants' approach fails to realize that the $300,000 transaction, regardless of whether it is equity or debt, would permit them to adjust the bases in their stock if, indeed, the appellants, and not the Bank, had advanced VAFLA the money. The more precise question, which the appellants fail initially to ask, is whether the guaranteed loan from the Bank to VAFLA is an economic outlay of any kind by the Shareholders-Guarantors. To decide this question, we must determine whether the transaction involving the $300,000 was a loan from the Bank to VAFLA or was it instead a loan to the Shareholders-Guarantors who then gave it to VAFLA, as either a loan or a capital contribution.
 
 
 6
 Finding no economic outlay, we need not address the question, which is extensively addressed in the briefs, of whether the characterization of the $300,000 was debt or equity.
 
 II.
 
 7
 To increase the basis in the stock of a subchapter S corporation, there must be an economic outlay on the part of the shareholder. See Brown v. Commissioner, 706 F.2d 755, 756 (6th Cir.1983), affg. T.C. Memo 1981-608 (1981) ("In similar cases, the courts have consistently required some economic outlay by the guarantor in order to convert a mere loan guarantee into an investment."); Blum v. Commissioner, 59 T.C. 436, 440 (1972) (bank expected repayment of its loan from the corporation and not the taxpayers, i.e., no economic outlay from taxpayers).[8] A guarantee, in and of itself, cannot fulfill that requirement. The guarantee is merely a promise to pay in the future if certain unfortunate events should occur. At the present time, the appellants have experienced no such call as guarantors, have engaged in no economic outlay, and have suffered no cost.[9]
 
 
 8
 The situation would be different if VAFLA had defaulted on the loan payments and the Shareholders-Guarantors had made actual disbursements on the corporate indebtedness. Those payments would represent corporate indebtedness to the shareholders which would increase their bases for the purpose of deducting net operating losses under Sec. 1374(c)(2)(B). Brown, 706 F.2d at 757. See also Raynor v. Commissioner, 50 T.C. 762, 770-71 (1968) ("No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation.").
 
 
 9
 The appellants accuse the Tax Court of not recognizing the critical distinction between Sec. 1374(c)(2)(A) (adjusted basis in stock) and Sec. 1374(c)(2)(B) (adjusted basis in indebtedness of corporation to shareholder). They argue that the "loan" is not really a loan, but is a capital contribution (equity). Therefore, they conclude, Sec. 1374(c)(2)(A) applies and Sec. 1374(c)(2)(B) is irrelevant. However, the appellants once again fail to distinguish between the initial question of economic outlay and the secondary issue of debt or equity. Only if the first question had an affirmative answer, would the second arise.
 
 
 10
 The majority opinion of the Tax Court, focusing on the first issue of economic outlay, determined that a guarantee, in and of itself, is not an event for which basis can be adjusted. It distinguished the situation presented to it from one where the guarantee is triggered and actual payments are made. In the latter scenario, the first question of economic outlay is answered affirmatively (and the second issue is apparent on its face, i.e., the payments represent indebtedness from the corporation to the shareholder as opposed to capital contribution from the shareholder to the corporation). To the contrary is the situation presented here. The Tax Court, far from confusing the issue by discussing irrelevant matters, was comprehensively explaining why the transaction before it could not represent any kind of economic outlay by the appellants.
 
 
 11
 The Tax Court correctly determined that the appellants' guarantees, unaccompanied by further acts, in and of themselves, have not constituted contributions of cash or other property which might increase the bases of the appellants' stock in the corporation.
 
 
 12
 The appellants, while they do not disagree with the Tax Court that the guarantees, standing alone, cannot adjust their bases in the stock, nevertheless argue that the "loan" to VAFLA was in its "true sense" a loan to the Shareholders-Guarantors who then theoretically advanced the $300,000 to the corporation as a capital contribution. The Tax Court declined the invitation to treat a loan and its uncalled-on security, the guarantee, as identical and to adopt the appellants' view of the "substance" of the transaction over the "form" of the transaction they took. The Tax Court did not err in doing so.
 
 
 13
 Generally, taxpayers are liable for the tax consequences of the transaction they actually execute and may not reap the benefit of recasting the transaction into another one substantially different in economic effect that they might have made. They are bound by the "form" of their transaction and may not argue that the "substance" of their transaction triggers different tax consequences. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579-80, 97 S.Ct. 850, 856-57, 51 L.Ed.2d 48 (1977); Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974).[10] In the situation of guaranteed corporate debt, where the form of the transaction may not be so clear, courts have permitted the taxpayer to argue that the substance of the transaction was in actuality a loan to the shareholder. See Blum, 59 T.C. at 440. However, the burden is on the taxpayer and it has been a difficult one to meet. That is especially so where, as here, the transaction is cast in sufficiently ambiguous terms to permit an argument either way depending on which is subsequently advantageous from a tax point of view.
 
 
 14
 In the case before us, the Tax Court found that the "form" and "substance" of the transaction was a loan from the Bank to VAFLA and not to the appellants:
 
 
 15
 The Bank of Virginia loaned the money to the corporation and not to petitioners. The proceeds of the loan were to be used in the operation of the corporation's business. Petitioners submitted no evidence that they were free to dispose of the proceeds of the loan as they wished. Nor were the payments on the loan reported as constructive dividends on the corporation's Federal income tax returns or on the petitioners' Federal income tax returns during the years in issue. Accordingly, we find that the transaction was in fact a loan by the bank to the corporation guaranteed by the shareholders.
 
 
 16
 Whether the $300,000 was lent to the corporation or to the Shareholders/Guarantors is a factual issue which should not be disturbed unless clearly erroneous. Finding no error, we affirm.
 
 
 17
 It must be borne in mind that we do not merely encounter naive taxpayers caught in a complex trap for the unwary. They sought to claim deductions because the corporation lost money. If, however, VAFLA had been profitable, they would be arguing that the loan was in reality from the Bank to the corporation, and not to them, for that would then lessen their taxes. Under that description of the transaction, the loan repayments made by VAFLA would not be on the appellants' behalf, and, consequently, would not be taxed as constructive income to them. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929) (payment by a corporation of a personal expense or debt of a shareholder is considered as the receipt of a taxable benefit). It came down in effect to an ambiguity as to which way the appellants would jump, an effort to play both ends against the middle, until it should be determined whether VAFLA was a profitable or money-losing proposition. At that point, the appellants attempted to treat the transaction as cloaked in the guise having the more beneficial tax consequences for them.
 
 
 18
 Finally, the appellants complain that the Tax Court erred by failing to apply debt-equity principles[11] to determine the "form" of the loan. We believe that the Tax Court correctly refused to apply debt-equity principles here, a methodology which is only relevant, if at all,[12] to resolution of the second inquiry--what is the nature of the economic outlay. Of course, the second inquiry cannot be reached unless the first question concerning whether an economic outlay exists is answered affirmatively. Here it is not.
 
 
 19
 The appellants, in effect, attempt to collapse a two-step analysis into a one-step inquiry which would eliminate the initial determination of economic outlay by first concluding that the proceeds were a capital contribution (equity). Obviously, a capital contribution is an economic outlay so the basis in the stock would be adjusted accordingly. But such an approach simply ignores the factual determination by the Tax Court that the Bank lent the $300,000 to the corporation and not to the Shareholders-Guarantors.
 
 
 20
 The appellants rely on Blum v. Commissioner, 59 T.C. 436 (1972), and Selfe v. United States, 778 F.2d 769 (11th Cir.1985), to support their position. However, the appellants have misread those cases. In Blum, the Tax Court declined to apply debt-equity principles to determine whether the taxpayer's guarantee of a loan from a bank to a corporation was an indirect capital contribution.[13] The Tax Court held that the taxpayer had failed to carry his burden of proving that the transaction was in "substance" a loan from the bank to the shareholder rather than a loan to the corporation. The Blum court found dispositive the fact that "the bank expected repayment of its loan from the corporation and not the petitioner." Blum, 59 T.C. at 440.[14]
 
 
 21
 With regard to Selfe, the Tax Court stated:
 
 
 22
 the Eleventh Circuit applied a debt-equity analysis and held that a shareholder's guarantee of a loan made to a subchapter S corporation may be treated for tax purposes as an equity investment in the corporation where the lender looks to the shareholder as the primary obligor. We respectfully disagree with the Eleventh Circuit and hold that a shareholder's guarantee of a loan to a subchapter S corporation may not be treated as an equity investment in the corporation absent an economic outlay by the shareholder.[15]
 
 
 23
 The Tax Court then distinguished Plantation Patterns, 462 F.2d 712 (5th Cir.1972), relied on by Selfe, because that case involved a C corporation, reasoning that the application of debt-equity principles to subchapter S corporations would defeat Congress' intent to limit a shareholder's pass-through deduction to the amount he or she has actually invested in the corporation.[16]
 
 
 24
 The Tax Court also distinguished In re Lane, 742 F.2d 1311 (11th Cir.1984), relied on by the Selfe court, on the basis that the shareholder had actually paid the amounts he had guaranteed, i.e., there was an economic outlay. In Lane, which involved a subchapter S corporation, the issue was "whether advances made by a shareholder to a corporation constitute debt or equity...." Id. at 1313. If the advances were debt, then Lane could deduct them as bad debts. On the other hand, if the advances were capital, no bad debt deduction would be permitted. Thus, the issue of adjusted basis for purposes of flow-through deductions from net operating losses of the corporation was not at issue. There was no question of whether there had been an economic outlay.
 
 
 25
 Although Selfe does refer to debt-equity principles, the specific issue before it was whether any material facts existed making summary judgment inappropriate. The Eleventh Circuit said:
 
 
 26
 At issue here, however, is not whether the taxpayer's contribution was either a loan to or an equity investment in Jane Simon, Inc. The issue is whether the taxpayer's guarantee of the corporate loan was in itself a contribution to the corporation [as opposed to a loan from the bank] sufficient to increase the taxpayer's basis in the corporation.
 
 
 27
 The Selfe court found that there was evidence that the bank primarily looked to the taxpayer and not the corporation for repayment of the loan.[17] Therefore, it remanded for "a determination of whether or not the bank primarily looked to Jane Selfe [taxpayer] for repayment [the first inquiry] and for the court to apply the factors set out in In re Lane and I.R.C. section 385 to determine if the taxpayer's guarantee amounted to either an equity investment in or shareholder loan to Jane Simon, Inc. [the second inquiry]." Id. at 775. The implications are that there is still a two-step analysis and that the debt-equity principles apply only to the determination of the characterization of the economic outlay, once one is found.
 
 
 28
 Granted, that conclusion is clouded by the next and final statement of the Selfe court: "In short, we remand for the district court to apply Plantation Patterns and determine if the bank loan to Jane Simon, Inc. was in reality a loan to the taxpayer." Id.[18] To the degree that the Selfe court agreed with Brown that an economic outlay is required before a shareholder may increase her basis in a subchapter S corporation, Selfe does not contradict current law or our resolution of the case before us. Furthermore, to the extent that the Selfe court remanded because material facts existed by which the taxpayer could show that the bank actually lent the money to her rather than the corporation, we are still able to agree.[19] It is because of the Selfe court's suggestion that debt-equity principles must be applied to resolve the question of whether the bank actually lent the money to the taxpayer/shareholder or the corporation, that we must part company with the Eleventh Circuit for the reasons stated above.
 
 
 29
 In conclusion, the Tax Court correctly focused on the initial inquiry of whether an economic outlay existed. Finding none, the issue of whether debt-equity principles ought to apply to determine the nature of the economic outlay was not before the Tax Court. The Tax Court is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 VAFLA is a Virginia corporation incorporated in February 1979 to acquire and operate the Six-Gun Territory Amusement Park near Tampa, Florida. At that time, both Cuzzocrea and Leavitt each paid $10,000 for their respective shares of VAFLA. Therefore, the adjusted bases of their stock amounted to $10,000 each, the cost of the stock
 
 
 [2]
 The Leavitts deducted a loss of $13,808 attributable to the corporation on their 1979 joint federal income tax return. The appellee disallowed $3,808 of that deduction. The Cuzzocreas deducted losses of $13,808, $29,921 and $22,746 attributable to the corporation on their 1979, 1980 and 1981 joint federal income tax returns, respectively. The appellee disallowed all of the deductions in excess of $10,000
 
 
 [3]
 Former Sec. 1374, in effect during the years in issue, provided:
 (a) GENERAL RULE.--A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.
 (b) ALLOWANCE OF DEDUCTION.--Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)). The deduction allowed by this subsection shall, for purposes of this chapter, be considered as a deduction attributable to a trade or business carried on by the shareholder.
 (c) DETERMINATION OF SHAREHOLDER'S PORTION.--
 * * *
 (2) LIMITATION.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of--
 (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as the day before the day of such sale or other disposition), and
 (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).
 
 
 [4]
 The first taxable year of VAFLA consisted of seven months and ended on September 30, 1979. The corporation had suffered a net operating loss of $265,566.47 and had a retained earnings deficit of $345,370.29. During its second taxable year ending September 30, 1980, the corporation suffered a net operating loss of $482,181.22 and had a retained earnings deficit of $1,093,383.56. During its third taxable year ending September 30, 1981, the corporation suffered a net operating loss of $475,175.70 and had a retained earnings deficit of $1,908,680.22
 
 
 [5]
 All the guarantees to the Bank were unlimited except the guarantee of Cuzzocrea which was limited to $300,000. The Shareholders-Guarantors had an aggregate net worth of $3,407,286 and immediate liquidity of $382,542
 
 
 [6]
 See supra note 4
 
 
 [7]
 Former Sec. 1374 of the 1954 tax code which was in effect during the years in issue provides that a shareholder of an electing small business corporation may deduct from gross income an amount equal to his or her portion of the corporation's net operating loss to the extent provided for in Sec. 1374(c)(2). Such deduction is limited, however, to the sum of (a) the adjusted basis of the shareholder's stock in the corporation, and (b) the adjusted basis of any indebtedness of the corporation to the shareholder, as determined as of the close of the corporation's taxable year
 
 
 [8]
 Even the Eleventh Circuit case on which the appellants heavily rely applies this first step. See Selfe v. United States, 778 F.2d 769, 772 (11th Cir.1985) ("We agree with Brown inasmuch as that court reaffirms that economic outlay is required before a stockholder in a Subchapter S corporation may increase her basis.")
 
 
 [9]
 Basis of property shall be the cost of such property. 26 U.S.C. Sec. 1012. "Cost" is defined as the "amount paid" for property "in cash or other property." 26 C.F.R. Sec. 1.1012-1(a)
 
 
 [10]
 On the other hand, the Commissioner is not so bound and may recharacterize the nature of the transaction according to its substance while overlooking the form selected by the taxpayer. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406 (1940). In doing so, the Commissioner usually applies debt-equity principles to determine the true nature of the transaction. As the Selfe court noted:
 This principle is particularly evident where characterization of capital as debt or equity will have different tax consequences. Thus in Plantation Patterns [462 F.2d 712 (5th Cir.1972) ] the court held that interest payments by a corporation on debentures were constructive stockholder dividends and could not be deducted by the corporation as interest payments. There, the former Fifth Circuit recharacterized debt as equity at the insistence of the Commissioner.
 Selfe, 778 F.2d at 773.
 It is important to note that those cases did not involve the question posed here of whether an economic outlay existed because it clearly did. Actual payments were made. The only question was what was the nature of the payments, debt or equity.
 
 
 [11]
 The thirteen factors identified in In re Lane, 742 F.2d 1311 (11th Cir.1984), and used to determine whether a shareholder's advances to a corporation are debt or equity are:
 (1) the names given to the certificates evidencing the indebtedness;
 (2) the presence or absence of a fixed maturity date;
 (3) the source of payments;
 (4) the right to enforce payment of principal and interest;
 (5) participation in management flowing as a result;
 (6) the status of the contribution in relation to regular corporate creditors;
 (7) the intent of the parties;
 (8) 'thin' or adequate capitalization;
 (9) identity of interest between creditor and stockholder;
 (10) source of interest payments;
 (11) the ability of the corporation to obtain loans from outside lending institutions;
 (12) the extent to which the advance was used to acquire capital assets; and
 (13) the failure of the debtor to repay on the due date or to seek a postponement.
 See also 26 U.S.C. Sec. 385.
 The appellants correctly state that the First, Fifth and Ninth Circuits have all applied traditional debt-equity principles in determining whether a shareholder's guarantee of a corporate debt was in substance a capital contribution. See Casco Bank & Trust Co. v. United States, 544 F.2d 528 (1st Cir.1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977); Plantation Patterns v. Commissioner, 462 F.2d 712 (5th Cir.1972), cert. denied, 409 U.S. 1076, 93 S.Ct. 683, 34 L.Ed.2d 664 (1972); Murphy Logging Co. v. United States, 378 F.2d 222 (9th Cir.1967). What the appellants fail to point out, however, is that those cases each involved activated guarantees, i.e., actual advances or payments on defaults. Therefore, the issue in those cases was not whether the taxpayer had made an "investment"--an economic outlay--in the corporation. The investment was admitted. The issue in those cases asked what was the nature of the investment--equity or debt. None of those cases involved the disallowance of deductions claimed by a shareholder pursuant to Sec. 1374 for his or her share of an electing corporation's operating losses where there had simply been no economic outlay by the shareholder under the guarantee.
 
 
 [12]
 In a Sec. 1374 subchapter S corporation case, the inquiry whether or not the economic outlay, assuming there is one, is debt or equity appears not to matter since the economic outlay, regardless of its characterization as debt or equity, will increase the adjusted basis. See supra note 7. There are no different tax consequences from the point of view of the taxpayer on the narrow issue of what amount of net operating losses may be deducted. Therefore, application of debt-equity principles in a case such as this one appears to be a red herring. However, we do not reach that issue because the Tax Court's factual finding that the appellants have shown no economic outlay on their part is not clearly erroneous
 
 
 [13]
 The Blum court stated:
 The respondent [Commissioner] has argued that the entire equity-contribution argument espoused by petitioner is inimical to the subch. S area. Because of our holding that the facts do not warrant the applicability of this doctrine to the present case we will not consider this rather fascinating question.
 Blum, 59 T.C. at 439 n. 4. In other words, the Blum court never reached the second step of the analysis, if there is a second step, because it found that there was no economic outlay. The Tax Court focused on the first inquiry: "we must find that the bank in substance loaned the sums to petitioner, not the corporation, and that petitioner then proceeded to advance such funds to the corporation." Id. at 440. The court found that "there is no evidence to refute the fact that the bank expected repayment of its loan from the corporation and not the petitioner." Id.
 Similarly, in Brown, the Sixth Circuit refused to "accept petitioners' contorted view of the transaction in furtherance of their 'substance over form' argument when, as the court below observed, 'the substance matched the form.' " Brown, 706 F.2d at 756. In other words, the loan to the corporation was, indeed, a loan to the corporation. See also In re Breit, 460 F.Supp. 873 (E.D.Va.1978).
 
 
 [14]
 The appellants and Judge Fay, in his dissent, contend that the Tax Court has misread its earlier opinion. Indeed, Judge Fay was the author of Blum. However, the Tax Court, sitting en banc, has now had the opportunity to interpret more precisely the language of Blum in light of subsequent cases and arguments. Leavitt v. Commissioner, 90 T.C. 206 (1988) (court reviewed). We agree with the amplification the Tax Court has given Blum
 The confusion may be explained to some degree because the test applied in Blum to determine whether the bank lent the money to the corporation or to the shareholders sounds similar to one of the debt-equity factors, i.e., the source of the payments. When focusing on the proper question, however, it becomes clear that the debt-equity principles are simply irrelevant to the determination of whether the $300,000, unquestionably a loan when it left the Bank, went to VAFLA or to the appellants. In Blum, the fact that the bank expected repayment from the corporation indicated that it actually lent the funds to the corporation and not the shareholder. Similarly, in the case before us, the fact that VAFLA paid the principal and interest on the $300,000 loan and did not treat the payments as constructive income taxable to the Shareholders-Guarantors, indicated that the Bank actually lent the money to VAFLA and not the appellants.
 
 
 [15]
 Our reading of the Selfe opinion, as explained below, does not require us to reject the case completely. In this respect we disagree with the Tax Court's interpretation of Selfe in the present case and in Erwin v. Commissioner, 56 T.C.M. (CCH) 1343 (1989)
 
 
 [16]
 The Committee on Finance of the Senate stated in its report:
 The amount of the net operating loss apportioned to any shareholder pursuant to the above rule is limited under section 1374(c)(2) to the adjusted basis of the shareholder's investment in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder.
 S.Rep. No. 1983, 85th Cong., 2d Sess. at 220, (1958-3 Cum.Bull. at 1141). The word "investment" was construed to mean the actual economic outlay of the shareholder in question. Perry v. Commissioner, 54 T.C. 1293, 1296 (1970).
 In other words, the economic outlay must be found to exist first.
 
 
 [17]
 The loan officer so stated during deposition testimony. Furthermore, the bank originally extended a credit line to the taxpayer in consideration of her pledge of 4500 shares of stock in another corporation. When her business was later incorporated, the bank converted the loans made on the existing credit line to corporate loans, accompanied by taxpayer's agreement guaranteeing the corporation's indebtedness to the bank. The Eleventh Circuit noted that "a guarantor who has pledged stock to secure a loan has experienced an economic outlay to the extent that that pledged stock is not available as collateral for other investments." Id. at 772 n. 7. Thus, upon remand, the district court could determine that there was an economic outlay on that basis alone, before deciding whether the form of the loan was to the taxpayer or to the corporation
 This particular situation is not before us and we decline to address the question of whether a guarantee can be an economic outlay when accompanied by pledged collateral.
 
 
 [18]
 It is unclear whether the reference to Plantation Patterns means that debt-equity principles should be applied or refers back to an earlier statement in the Selfe court's opinion which related to the initial inquiry:
 In Plantation Patterns, the Fifth Circuit held that a loan is deemed to be made to a stockholder who has guaranteed a corporate note when the facts indicate that the lender is looking primarily to the stockholder for repayment.
 Selfe, 778 F.2d at 771.
 
 
 [19]
 We note, however, that under the circumstances presented here, the Tax Court resolved that factual determination against the appellants because they could not overcome the uncontradicted fact that they did not treat the loan repayments made by VAFLA as constructive income to them. Such a position was inconsistent with their claim that the transaction was in actuality a loan from the Bank to them followed by their contribution of the $300,000 to the corporation