T.C. Memo. 2001-44


UNITED STATES TAX COURT


JEFFREY M. GUERRERO AND GENEDINE R. GUERRERO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ALAN G. BONE AND KATHLEEN A. BONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20218-98, 20219-98.    Filed February 23, 2001.


<u>James L. McDonald, Sr.</u>, for petitioners.

<u>Larry D. Anderson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  In separate notices of deficiency, respondent determined deficiencies in petitioners' income taxes and penalties as follows:

| Docket No. | Year | Deficiency | Penalty Section 6662(a) |
|---|---|---|---|
| 20218-98 | 1992 | $34,515 | $6,903 |
| 20219-98 | 1992 | 31,568 | 6,314 |

These cases have been consolidated for purposes of trial, briefing, and opinion.

The issues for our consideration are: (1) Whether petitioners Jeffrey Guerrero (Mr. Guerrero) and Alan Bone (Mr. Bone) had sufficient bases in 1992 to deduct $106,487 and $98,064, respectively, as their shares of the operating loss from a subchapter S corporation, Olympic Concrete Pumping, Inc. (Olympic); (2) whether Olympic's 1992 income was understated by $56,598 as the result of an error in converting book income to taxable income; and (3) whether petitioners are liable for the penalties under section 6662(a)[1] for negligence.

FINDINGS OF FACT

We incorporate by this reference our findings of fact in A.J. Concrete Pumping, Inc. v. Commissioner, T.C. Memo. 2001-42, and Bone v. Commissioner, T.C. Memo. 2001-43.

Petitioners Jeffrey and Genedine Guerrero resided at 4215 Osprey Pointe, Woodstock, Georgia, on the date they filed their petition in this case. Petitioners Alan and Kathleen Bone resided at 617 North Lake Drive, Canton, Georgia.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the periods under consideration.

On March 15, 1990, Messrs. Guerrero and Bone formed Olympic, a subchapter S corporation. Olympic was formed to handle a concrete project in Washington State. Messrs. Bone and Guerrero each contributed $500 in exchange for Olympic's stock.

A.J. Concrete Pumping, Inc. (A.J. Concrete), was a corporation in the business of pumping concrete. Mr. Bone owned 51 percent of its stock, and Mr. Guerrero owned 49 percent of its stock. Messrs. Bone and Guerrero arranged for Olympic to lease concrete and pumping trucks and to borrow capital from A.J. Concrete. Olympic borrowed funds from A.J. Concrete during Olympic's existence. Olympic discontinued operations in 1992.

Olympic kept its books and records on an accrual basis and converted to cash for tax purposes. It reported, for Federal tax purposes, on a calendar year basis. Olympic reported a $64,491 loss in 1990, a $233,172 loss in 1991, and a $9,021 loss in 1992. On Olympic's Schedules L, Balance Sheet, attached to its 1990, 1991, and 1992 tax returns, Olympic did not list any loan obligations to its shareholders.

Mr. Bone claimed no loss from Olympic for 1990 because he was not listed as a shareholder. He claimed a $20,610 loss for 1991 and carried forward a $93,944 loss because of a basis limitation. In 1992, Mr. Bone claimed his 1991 Olympic carryover loss of $93,644 plus his 49-percent share of Olympic's 1992 loss for a total of $98,064.

Mr. Guerrero reported a $64,491 loss for 1990.  He claimed a $21,452 loss for 1991 and carried forward a $97,466 loss because of a basis limitation.  For 1992, Mr. Guerrero claimed his 1991 Olympic carryover loss of $97,466 plus an additional 1992 loss for a total of $106,487.

Respondent determined that petitioners did not have sufficient bases to claim the 1992 losses from Olympic.  That adjustment resulted in determinations of income tax deficiencies for petitioners.  Respondent also determined that petitioners were liable for accuracy-related penalties under section 6662(a).

OPINION

I.  Shareholder's Basis

Under section 1366, an S corporation shareholder may deduct his pro rata share of losses (deductions) of the S corporation. The losses, however, are limited to the sum of the adjusted basis of the shareholder's stock in the corporation and the adjusted basis of any indebtedness of the corporation to the shareholder. See sec. 1366(d)(1)(A) and (B).

In order to increase the basis in the indebtedness of an S corporation, there must be an economic outlay on the part of the shareholder.  See Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), affg. 90 T.C. 206 (1988); Brown v. Commissioner, 706 F.2d 755, 756 (6th Cir. 1983), affg. T.C. Memo. 1981-608.  The economic outlay required under section

1366(d)(1)(B) must leave "'the taxpayer poorer in a material sense'" after the transaction than when the transaction began. Perry v. Commissioner, 54 T.C. 1293, 1296 (1970) (quoting Horne v. Commissioner, 5 T.C. 250, 254 (1945)), affd. per order 27 AFTR 2d 1464, 71-2 USTC par. 9502 (8th Cir. 1971). Although a bona fide loan from a shareholder to an S corporation will increase the shareholder's basis, the shareholder must make an actual economic outlay and directly incur the indebtedness. See Underwood v. Commissioner, 63 T.C. 468, 476 (1975), affd. 535 F.2d 309 (5th Cir. 1976).

Respondent contends that petitioners have insufficient bases to claim 1992 losses because they failed to establish that they made additional capital contributions or extended additional loans in 1992. Petitioners argue that they wrote checks and made direct loans to Olympic.

At trial, petitioners presented an unorganized collection of checks and financial records. They had previously presented these same documents to respondent during the audit examination. Even though the records were not in order and were difficult to understand, neither petitioners nor their return preparer attempted to explain the records in any detail.

Moreover, Olympic's corporate records do not reflect that petitioners made any loans to Olympic during 1991 or 1992. Olympic's 1991 and 1992 Schedules L do not list any loans from

its shareholders.  Thus, while petitioners have introduced copies of checks they wrote to Olympic, they have failed to establish that those checks were considered or intended to be capital infusions or loans to Olympic.  The checks could represent repayments of loans from Olympic to petitioners or payments for expenditures that Olympic made on behalf of petitioners.  Without adequate explanation of the evidence by petitioners or their return preparer, petitioners have not shown that the payments were capital in nature or that they constituted loans.

Furthermore, even assuming that the checks were evidence of direct loans from petitioners, there is no evidence that the loans were outstanding on December 31, 1992, or that the amounts had not already been used in claiming 1990 or 1991 flowthrough losses.  Petitioners' 1991 tax returns indicate that their bases at the end of 1991 were zero.  Therefore, as a threshold matter, petitioners would have had to show that they made additional direct contributions or loans to Olympic in 1992, and petitioners have simply failed to do that.

Petitioners also argue that they pledged personal assets to secure Olympic's corporate debt.  Despite petitioners' argument to the contrary, their pledges of personal assets to secure Olympic's debt might indicate that they were guarantors.  However, even if petitioners were guarantors, Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), does not apply because

there is no indication that the loans were originally made to the shareholder, and the record does not indicate that the creditor looked primarily to the shareholder for repayment of the loan.[2]

Petitioners also argue that they received a $100,000 management fee from A.J. Concrete in 1992 which they did not actually accept but instead constructively contributed to Olympic.  Olympic's 1992 return, however, does not support petitioners' argument.  There is no indication on Olympic's return that it received a capital infusion or loan from petitioners of $100,000.  Moreover, A.J. Concrete's tax returns do not list any loans to Olympic after March 31, 1992. Petitioners have simply failed to show that this was the case.

Accordingly, respondent's determination that petitioners had insufficient bases in Olympic for 1992 is sustained.

II.  Understated Income

Respondent determined that Olympic's 1992 income was understated by $56,598 as the result of an error in converting book income to taxable income.  Petitioners did not present any evidence on this issue and failed to address it in their post-

---

[2] The Court of Appeals for the Eleventh Circuit has also distinguished its holding in Selfe v. United States, 778 F.2d 769 (11th Cir. 1985).  See, e.g., Sleiman v. Commissioner, 187 F.3d 1352 (11th Cir. 1999), affg. T.C. Memo. 1997-530; Spencer v. Commissioner, 110 T.C. 62, 84-86 (1998), affd. 194 F.3d 1324 (11th Cir. 1999).

trial briefs.  Accordingly, respondent's determination that Olympic understated its income by $56,598 is sustained.

III.  Section 6662(a)

Respondent determined accuracy-related penalties under section 6662(a).  That section imposes a penalty in the amount of 20 percent of any portion of the underpayment attributable to negligence or disregard of rules or regulations.  Negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The negligence penalty will apply if, among other things, the taxpayer fails to maintain adequate books and records with regard to the items in question.  See Crocker v. Commissioner, 92 T.C. 899, 917 (1989).

Respondent determined that petitioners are liable for the penalties on the understatements.  Petitioners failed to address the accuracy-related penalties in their briefs and presented no evidence at trial as to why the resulting understatements or deficiencies were reasonable.  Petitioners did state that "many records were either lost or destroyed and/or not available which very likely would have substantiated further losses, not income, from the failed Olympic Concrete Pumping Company" but did not provide any explanation for the lost or destroyed records.

Petitioners' 1991 returns show their awareness that losses claimed from S corporations are limited to basis.  In 1992,

however, they claimed their carryover losses from 1991 even though they had not made any capital contributions or loans in 1991 to increase their bases. Petitioners provided no explanation for their actions and accordingly have failed to show that their actions were reasonable and not careless or made with intentional disregard of rules or regulations. Petitioners are liable for the section 6662(a) penalties for the 1992 tax year.

We have considered all other arguments of the parties, and, to the extent not addressed herein, we find them to be either moot, without merit, or irrelevant.

To reflect the foregoing,

<u>Decisions will be entered for</u> <u>respondent.</u>