T.C. Memo. 2001-196

UNITED STATES TAX COURT

CHRISTOPHER K. AND BRENDA M. COX, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9989-99, 9990-99,        Filed July 27, 2001.
      9991-99.

<u>Gregory W. Bond</u>, for petitioners.

<u>Ann L. Darnold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In separate notices of deficiency, respondent determined the following income tax deficiencies,

---

[1]Cases of the following petitioners are consolidated herewith:  Gregory A. Cox and Linda M. Cox, docket No. 9990-99; and Robert A. Burke and Deborah A. Burke, docket No. 9991-99.

penalties, and additions to tax with respect to petitioners'

Federal income taxes:[2]

Christopher K. Cox (Christopher) & Brenda M. Cox (Brenda),
docket No. 9989-99

| Year | Deficiency | Sec. 6662 penalty | Sec. 6651(a)(1) addition to tax |
|------|-----------|-------------------|--------------------------------|
| 1991 | $1,796 | | |
| 1992 | 12,291 | | |
| 1994 | 10,533 | $2,107 | $371 |

Gregory A. Cox (Gregory) & Linda M. Cox (Linda),
docket No. 9990-99

| Year | Deficiency | Sec. 6662 penalty |
|------|-----------|-------------------|
| 1992 | $8,205 | |
| 1994 | 1,190 | $178 |

Robert A. Burke (Robert) & Deborah A. Burke (Deborah),
docket No. 9991-99

| Year | Deficiency | Sec. 6662 penalty |
|------|-----------|-------------------|
| [1]1992 | $12,825 | |
| 1994 | 4,706 | |
| 1995 | 5,561 | $1,112 |

[1]The record also reflects that respondent issued to Deborah a separate notice of deficiency disallowing a net operating loss carryback claimed for 1991. Although the parties have treated 1991 as one of the years in dispute, we do not examine respondent's determinations made in Deborah's 1991 notice of deficiency because Deborah did not file a petition with this Court regarding that notice. Sec. 6213(a).

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

Petitioners in each docket filed separate petitions contesting the proposed deficiencies, penalties, and additions to tax. These cases were consolidated for trial, briefing, and opinion pursuant to Rule 141(a) because they present common issues of fact and law.

After the parties' concessions,[3] the only remaining issues for decision are:[4]

(1) Whether Christopher, Gregory, and Deborah, shareholders in Cox Tomato, Inc. (Cox Tomato), an S corporation, had sufficient bases in their Cox Tomato stock and in any

[3]Respondent and Christopher agree that, in 1994, Christopher had gain of $1,554 from the sale of stock, rather than $11,305 as was set forth in the notice of deficiency. Christopher also conceded that he received ordinary dividend income of $391 in 1994.

Christopher did not present evidence regarding respondent's determination that he had unreported capital gain distributions of $490 from Merrill Lynch in 1994, or that he was liable for the addition to tax under section 6651(a)(1) for failure to timely file his 1994 return, and Christopher did not dispute these adjustments on brief. These adjustments are deemed conceded in accordance with Rule 149(b).

Christopher, Gregory, and Deborah did not present evidence regarding respondent's determination that they had unreported distributions from Cox Tomato in 1994 of $9,784, $6,124, and $4,204, respectively, and they did not dispute these adjustments on brief. These adjustments are deemed conceded in accordance with Rule 149(b).

Deborah conceded that she received from Cox Tomato cash distributions of $17,440 in 1994 and $18,000 in 1995 and that those amounts increase her taxable income for the respective taxable years. Deborah also conceded that her share of Cox Tomato's loss for 1994 was $117,881, rather than $139,301 as she originally reported.

[4]The only other issues raised in the notices of deficiency are computational.

indebtedness owed by Cox Tomato to them (hereinafter referred to, in the aggregate, as basis in Cox Tomato) to deduct their respective shares of the ordinary losses generated by Cox Tomato during the years at issue;

(2) whether Deborah may reduce the gross income she derived from her use of a corporate automobile to reflect that she used the automobile, in part, for business and that she reimbursed Cox Tomato for some of her personal use; and

(3) whether Christopher and Brenda and Gregory and Linda are liable for the accuracy-related penalty imposed by section 6662(a) for 1994, and whether Robert and Deborah are liable for the accuracy-related penalty imposed by section 6662(a) for 1995.

FINDINGS OF FACT

I.   Background

Some of the facts have been stipulated and are so found.  We incorporate the stipulation of facts into these findings by this reference.

On the date the petitions were filed, Christopher and Brenda resided in Edmond, Oklahoma; Gregory and Linda resided in Oklahoma City, Oklahoma; and Robert and Deborah resided in Ardmore, Oklahoma.  Christopher, Gregory, and Deborah (collectively referred to as petitioner shareholders) are siblings.

For all relevant periods, Cox Tomato was an S corporation that bought and sold fresh produce primarily from California and Florida. In 1987, petitioner shareholders inherited their shares of stock in Cox Tomato from their father. For all relevant periods, petitioner shareholders were the sole shareholders of Cox Tomato and used the cash method of accounting and the calendar year for tax reporting.

During the years at issue, Christopher and Gregory each owned 34.32 percent and Deborah owned 31.36 percent of Cox Tomato's stock. Without regard to any of the disputed transactions discussed <u>infra</u>, their bases in their shares of Cox Tomato stock were:

|  | Christopher | Gregory | Deborah |
|---|---|---|---|
| 12/31/87 | $33,250 | [1]$33,250 | $28,500 |
| 12/31/88 | 7,534 | 7,534 | 6,460 |
| 12/31/89 | 34,664 | 34,664 | 31,889 |
| 12/31/90 | 15,465 | 15,465 | 15,210 |
| 12/31/91 | (26,575) | (26,575) | (21,788) |
| 12/31/92 | 9,045 | 9,045 | 11,890 |
| 12/31/93 | (911) | (911) | 2,791 |

[1]The parties stipulated each petitioner shareholder's basis. The stipulation with respect to Gregory's basis, however, appears to contain a typographical error. The corrected calculation indicates that Gregory actually had a basis on Dec. 31, 1987, of $33,250 instead of $32,250, the stipulated number.

In 1994, Cox Tomato had an operating loss of $375,896. Petitioner shareholders reported their pro rata shares of Cox Tomato's 1994 operating loss on their respective Schedules E, Supplemental Income and Loss, to their respective Forms 1040,

United States Individual Income Tax Return, for 1994. Because each petitioner shareholder was unable to utilize fully his or her pro rata share of Cox Tomato's 1994 loss, each petitioner shareholder filed a Form 1045, Application for Tentative Refund, which reported a net operating loss (NOL) for 1994 and carried that NOL back to prior taxable years. Christopher carried his NOL back to 1991 and 1992, Gregory carried his NOL back to 1992 only, and Deborah carried her NOL back to 1991, 1992, and 1993.

In 1995, Cox Tomato had an operating loss of $193,825. Deborah reported $12,000 of that loss on the Schedule E to her 1995 Form 1040.

## II. Loans

### A. Loan 91850 for $220,000

On April 7, 1989, Christopher and Brenda purchased improved real estate located at 222 East Sheridan in Oklahoma City, Oklahoma, and gave a mortgage on the property (first mortgage) to the seller. Christopher subsequently leased the property to Cox Tomato for use as a corporate office and warehouse (the warehouse).

With respect to the warehouse, Christopher reported rents received, mortgage and other interest paid, and expenses for repairs paid, on his Schedules E to his 1991, 1992, and 1994 Forms 1040. Neither Gregory nor Deborah received any income or

paid any expenses with respect to the warehouse in any of the years in issue.

On June 16, 1993,[5] Christopher and Brenda borrowed $220,000 from the Oklahoma Bank (loan 91850).  Cox Tomato, acting through Christopher in his official capacity as president, was a signatory on the loan.  Christopher, Brenda, and Cox Tomato executed an installment note for $220,000.  Christopher and Brenda also executed a mortgage in favor of the Oklahoma Bank giving the bank a security interest in the warehouse.  Christopher used approximately $70,000 of the loan proceeds to pay off the first mortgage on the warehouse and gave approximately $148,000 of the remaining loan proceeds to Cox Tomato to fund its operations.

The terms of the installment note required 60 monthly payments.  Christopher treated loan 91850 as his personal debt and made at least some payments on it.  Neither Gregory nor Deborah made any payments on loan 91850 in any of the years in

---

[5]Because no deficiency has been asserted for the 1993 taxable year, we may not determine an overpayment or underpayment of tax for that taxable year.  Sec. 6214(b); Alford v. Commissioner, 800 F.2d 987, 988 (10th Cir. 1986), affg. 84 T.C. 1308 (1985).  We may, however, examine the facts and transactions of the 1993 taxable year to the extent necessary to correctly determine petitioners' tax liabilities for the years at issue. Sec. 6214(b); Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440-441 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975).

issue, either to the Oklahoma Bank or to Christopher in reimbursement for his payments.

B.    Loan 92107 for $70,000

On January 27, 1995, petitioner shareholders and Cox Tomato as co-makers borrowed $70,000 from the Oklahoma Bank (loan 92107) for Cox Tomato's operating capital.  Petitioner shareholders and Cox Tomato executed an installment note for $70,000 in favor of the Oklahoma Bank.  Christopher and Brenda also gave the Oklahoma Bank a mortgage on their personal residence as security for the loan.

Christopher treated loan 92107 as his personal obligation and made at least some payments on it during 1995.  Neither Gregory nor Deborah made any payments on the loan, either to the Oklahoma Bank or to Christopher in reimbursement for his payments, during 1995.

III. Monthly Distributions and Corporate Automobile

Cox Tomato distributed to Deborah $1,500 each month from January to May 1994, and from January to December 1995.  In the intervening months of June 1994 to December 1994, Cox Tomato distributed to Deborah only $1,420 each month, retaining the $80 difference as Deborah's payment for her personal use of a 1994 Ford Explorer (automobile) provided to her by Cox Tomato from

March 1994 through December 1995.  The automobile's annual lease value was $7,750 in 1994 and 1995.[6]

Deborah also used the automobile for business purposes such as collecting receivables, and other employees used the automobile during working hours to deliver small quantities of produce.  Neither Cox Tomato nor any petitioner shareholder, however, kept a mileage log or any other documentation to substantiate the automobile's business use during the years at issue.

IV.  Notices of Deficiency

In the notices of deficiency, respondent determined that in 1994 petitioner shareholders did not have sufficient bases in Cox Tomato to claim the losses reported.  Respondent determined that Christopher and Gregory had no bases in Cox Tomato. Respondent determined that Deborah had a basis of $2,791 in Cox Tomato, allowed Deborah to recognize a flowthrough loss in 1994 to the extent of that basis, and disallowed the $12,000 loss she claimed in 1995 because respondent determined that she had no remaining basis.  Respondent disallowed each of petitioner shareholders' NOL carrybacks for all the years in issue. Respondent further determined that Deborah must include the

---

[6]Deborah has conceded that the distributions received during 1994 and 1995 are includable in her income as determined by respondent.

prorated annual lease value of the corporate automobile she drove in 1994 and 1995 in her income for those years.

Lastly, respondent determined that Christopher, Gregory, and their spouses are each liable for an accuracy-related penalty for 1994 under section 6662(a) and (b)(1) (for negligence or disregard of rules or regulations) and that Deborah and her spouse are liable for an accuracy-related penalty for 1995 under section 6662(a) and (b)(2) (for substantial understatement).

OPINION

I.   Petitioners' Bases in Cox Tomato

The primary issue for consideration is whether petitioner shareholders had sufficient bases in their Cox Tomato stock and in any indebtedness owed by Cox Tomato to them to deduct their distributive shares of Cox Tomato's losses for the years at issue.

Respondent determined that the amount of Cox Tomato's losses petitioner shareholders could deduct was limited by their adjusted bases in Cox Tomato at the end of 1993.  Petitioner shareholders contend that certain transactions in which they participated increased their bases in Cox Tomato under section 1366(d)(1), thereby allowing petitioners to deduct a larger portion of Cox Tomato's losses.

A shareholder of an S corporation may deduct his pro rata share of any loss sustained by the corporation.  Sec. 1366(a).  A

shareholder's deduction, however, is limited to his basis in the S corporation's stock and in any debt the corporation may owe him (hereinafter referred to, in the aggregate, as basis in an S corporation).  Sec. 1366(d)(1).[7]  A taxpayer may increase his basis in an S corporation only if he makes an additional economic outlay to or for the benefit of the S corporation.  Goatcher v. United States, 944 F.2d 747, 751 (10th Cir. 1991); Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989) ("To increase the basis in the stock of a subchapter S corporation, there must be an economic outlay on the part of the shareholder."), affg. 90 T.C. 206 (1988); Guerrero v. Commissioner, T.C. Memo. 2001-44 ("In order to increase the basis in the indebtedness of an S corporation, there must be an economic outlay on the part of the shareholder.").  An economic outlay for this purpose is an actual contribution of cash or property by the shareholder to the S corporation or a transaction that leaves the S corporation indebted to the shareholder.  Sec. 1366(d)(1); Estate of Leavitt v. Commissioner, supra at 423.  The economic outlay must leave "'the taxpayer poorer in a material sense'" after the transaction than when the transaction began. Perry v. Commissioner, 54 T.C. 1293, 1296 (1970) (quoting Horne v. Commissioner, 5 T.C. 250, 254 (1945)).

---

[7]Losses in excess of basis may be carried forward to any subsequent year in which a shareholder has basis in the S corporation's stock or debt.  Sec. 1366(d)(2).

When an S corporation shareholder is only indirectly liable for a corporate debt, that shareholder has not transferred any cash or property to the S corporation or created corporate indebtedness owed to him until and to the extent the shareholder actually pays the debt. Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968). For example, if a shareholder of an S corporation simply guarantees a corporate debt, that guaranty does not constitute an economic outlay, and the shareholder is not entitled to increase his basis in the S corporation as a result of the guaranty. Goatcher v. United States, supra; Estate of Leavitt v. Commissioner, supra. When, however, a shareholder obtains a personal loan and transfers some or all of the loan proceeds to the S corporation, he has made an economic outlay and is entitled to increase his basis in the S corporation in an amount equal to the amount transferred to the S corporation. See Prashker v. Commissioner, 59 T.C. 172, 176 (1972).

With these principles in mind, we examine the transactions that petitioner shareholders contend entitle them to an increase in their S corporation bases.

A. 91850 Loan for $220,000

1. Basis Apportionment Among Petitioner Shareholders

Petitioner shareholders first contend that loan 91850 should increase each of their bases because they each made an economic outlay in that the loan was secured with jointly owned property.

Respondent contends that neither Gregory nor Deborah made an economic outlay with regard to loan 91850.

Petitioner shareholders' argument depends upon a faulty premise. Petitioner shareholders contend that although Christopher and Brenda purchased the warehouse and titled it in their names, Christopher and Brenda actually held the warehouse as nominees for the three siblings. Because the warehouse was used as security for the loan, petitioner shareholders argue that, as the legal and/or equitable owners of the warehouse, they are entitled to increase their respective bases in Cox Tomato by the amount of the loan.

Whether petitioner shareholders jointly owned the warehouse is not controlling here. A shareholder who uses individually owned property to secure corporate debt has not necessarily made an economic outlay requiring an increase in his adjusted basis under section 1366(d)(1). Perry v. Commissioner, supra at 1296; Raynor v. Commissioner, supra at 770-771; Guerrero v. Commissioner, supra. Economic outlay requires a contribution of cash or property in exchange for the stock of the corporation or the creation of an indebtedness owed by the corporation to the shareholder. Estate of Leavitt v. Commissioner, supra at 422-423. As we stated in Raynor v. Commissioner, supra at 770-771:

> No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of

the obligation.  Prior to that crucial act, 'liability' may exist, but not debt to the shareholders.

Neither Gregory nor Deborah made any payments to the Oklahoma Bank, Christopher, or Cox Tomato regarding loan 91850.[8] Consequently, neither Gregory nor Deborah made any economic outlay with regard to the 91850 loan, and the loan does not increase their bases in Cox Tomato under section 1366(d)(1).

### 2.  Christopher's Increase in Basis

Christopher contends, in the alternative, that loan 91850 should increase only his basis in Cox Tomato because only he owned the warehouse and made payments on the loan.  Apparently assuming that loan 91850 was really a personal loan to Christopher and not to Cox Tomato, respondent concedes that Christopher is entitled to increase his basis in Cox Tomato to the extent that Christopher proves how much of the loan proceeds was paid over to Cox Tomato.  Respondent contends, however, that Christopher failed to introduce "sufficient credible evidence to establish the amount contributed to Cox Tomato and the amount

---

[8]Deborah argued in connection with the 91850 loan that she contributed or loaned $75,000 to Christopher for improvements to the warehouse and that her transfer of funds shows she was a co-owner of the warehouse.  As discussed supra, however, ownership is not controlling here.  Moreover, Deborah has not argued or proven that she is entitled to adjust her basis for this amount in any event.  She offered no documentation of her $75,000 transfer of funds, nor did she prove that the funds went to Cox Tomato.  We are not required to accept a taxpayer's self-serving testimony as evidence, particularly in the absence of corroborating evidence.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

used to pay off * * * [Christopher and Brenda's] first mortgage on * * * [the warehouse]."

Christopher has the burden of proving how much money he transferred to Cox Tomato out of the proceeds of loan 91850. Rule 142(a).  Citing a lack of documentation in the record, respondent asserts that Christopher has not met his burden.

While it is true that the record in this case is lacking in documentation that would have made our analysis of this issue easier and more satisfying, Christopher nevertheless has convinced us that he transferred approximately $148,000 of the loan proceeds to Cox Tomato in 1993.  Christopher testified to that effect and also offered an explanation regarding why documentation of what transpired in 1993 is not available.[9]  We accept Christopher's testimony on these subjects as credible.

After evaluating the evidence, we find that Christopher transferred $148,000 of the $220,000 loan proceeds to Cox Tomato in 1993, and we hold that Christopher is entitled to increase his adjusted basis in Cox Tomato by a corresponding amount.

B.   Loan 92107 for $70,000

Petitioner shareholders also contend that they were entitled to increase their bases in Cox Tomato in an aggregate amount of

---

[9]Christopher testified that he tried to find his records for 1993 and 1994 but was not able to do so.  He also tried to get records from UMB Bank (formerly the Oklahoma Bank), but the bank did not retain records for more than 5 years.

$70,000 to reflect that they were personally liable on loan 92107. Petitioner shareholders urge us to conclude that they made an economic outlay simply by signing the loan documents. Respondent contends that the loan was not made until 1995; therefore, the issue of whether the loan requires an adjustment to the bases of Christopher and Gregory in 1994 is not before us. Respondent further contends that Deborah did not make an economic outlay with respect to loan 92107.

Loan 92107 was not made until 1995. Since the loan did not exist in 1994, it cannot have any bearing on the calculation of Christopher's or Gregory's basis in Cox Tomato during 1994.[10]

Deborah is also not entitled to any adjustment in her basis by reason of loan 92107. Although Deborah signed as a borrower on the promissory note memorializing the loan, Deborah did not make any payments to the Oklahoma Bank on loan 92107, nor did she transfer any cash or property to Cox Tomato in connection with loan 92107. We hold, therefore, that Deborah has failed to prove that she made any economic outlay with respect to loan 92107 and, absent such proof, she is not entitled to increase her basis in Cox Tomato by reason of the loan.

---

[10]Christopher asserts that he is entitled to increase his basis in Cox Tomato to reflect the $70,000 loan (the 92107 loan) and an additional $66,000 loan that he obtained in 1995. We decline to decide whether these loans increase Christopher's basis, since Christopher has not filed a petition with respect to any year after 1994.

II.  Corporate Automobile

Respondent determined that the prorated annual lease value of the corporate automobile furnished to Deborah during 1994 and 1995 constituted additional gross income to Deborah in each of those years.  Deborah concedes that the automobile's prorated annual lease value constituted income to the extent that she used the automobile for personal reasons and did not pay for such personal use.  Deborah contends, however, that the automobile's prorated annual lease value did not constitute income to the extent the automobile was used for business purposes and to the extent she compensated Cox Tomato for her personal use of the automobile.  Deborah, however, has cited no provision of the Internal Revenue Code in support of her argument.

Section 61(a)(1) provides that gross income includes fringe benefits such as employer-provided automobiles.  Sec. 1.61-21(a)(1), Income Tax Regs.  Absent a statutory exclusion, section 61(a)(1) requires that Deborah's gross income include the full annual lease value of the automobile, prorated for the portion of the calendar year in which the automobile was available to Deborah.  Sec. 1.61-21(d)(1)(i), Income Tax Regs.  The parties agree that the prorated annual lease value of the automobile is $6,458 for 1994 and $7,750 for 1995.  Sec. 1.61-21(d)(2), (4)(i)(A) and (B), and (5)(i), Income Tax Regs.

If Deborah's argument is that she is entitled to exclude a portion of the annual lease value of the automobile from her gross income, as we interpret it to be, her argument would appear to be grounded in section 132. Section 132 provides that gross income does not include any fringe benefit that qualifies as a working condition fringe. Sec. 132(a)(3). A working condition fringe is defined as "any property * * * provided to an employee of the employer to the extent that, if the employee paid for such property * * * such payment would be allowable as a deduction under section 162 or 167." Sec. 132(d). The value of property or services furnished to an employee by an employer, however, may not be excluded from an employee's gross income as a working condition fringe pursuant to section 132 unless the substantiation requirements of either section 274(d) or section 162, whichever is applicable, and related regulations are satisfied. Sec. 1.132-5(c)(1), Income Tax Regs.

Section 274(d) provides that no deduction is allowed with respect to the use of "listed property", as defined in section 280F(d)(4), unless certain elements are substantiated. See sec. 1.274-5T(e)(1)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46026 (Nov. 6, 1985). A passenger automobile of the type furnished to Deborah qualifies as listed property under section 280F(d)(4)(A)(i). Hence, Deborah must satisfy the substantiation requirements of section 274(d) in order to argue successfully she

may exclude all or part of the prorated annual lease value of the automobile as a working condition fringe under section 132. Sec. 1.132-5(c)(2), Income Tax Regs.

Section 274(d)(4) requires a taxpayer to substantiate, by adequate records or by sufficient evidence corroborating the taxpayer's own statement, the following four elements before a deduction or credit with respect to the alleged business use of an automobile will be allowed: (1) The amount of the expenditure; (2) the mileage for each business use of the automobile and the total mileage for all use of the automobile during the taxable period; (3) the date of the business use; and (4) the business purpose of the use of the automobile. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Although the applicable regulations provide considerable guidance to employees who, like Deborah, seek to exclude a portion of the value of a company-supplied automobile from their income as a working condition fringe and are required to substantiate their business use of the automobile, e.g., sec. 1.132-5(c) through (f), Income Tax Regs.; sec. 1.274-5T(b)(6) and (c), (e), Temporary Income Tax Regs., 50 Fed Reg. 46016 (Nov. 6, 1985); sec. 1.274-6T, Temporary Income Tax Regs., 50 Fed. Reg. 46037 (Nov. 6, 1985), Deborah's effort to substantiate business use consisted solely of general testimony that she used the

automobile for business approximately 70 percent of the time. She introduced no testimony, documentation, or corroborative evidence of any kind sufficient to establish each of the elements required by section 274(d). Sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 64016 (Nov. 6, 1985).

Deborah also argues that the amounts retained by Cox Tomato from the monthly distributions she received from June through December 1994 to compensate Cox Tomato for her personal use of the corporate automobile should be excluded from her gross income. We reject this argument because it fails to recognize that respondent's adjustment increasing Deborah's income by the amount of distributions she received for 1994 includes only the distributions Deborah actually received; i.e., the distributions net of the amounts retained by Cox Tomato for Deborah's personal use of the automobile. In effect, Deborah has received the benefit of an exclusion because the amount Cox Tomato withheld from her distribution to compensate the company for her personal use of the automobile was not included in her income. Deborah is not entitled to exclude from income money she is not otherwise required to include in income in the first place.

On this record, therefore, we hold that Deborah has failed to substantiate her business use of the corporate automobile she drove during 1994 and 1995 as required by sections 132 and 274 and that Deborah is not entitled to exclude any part of the

automobile's prorated lease value from her gross income in those years.

III. Section 6662 Penalty

    A.     Accuracy-Related Penalties for Negligence or Disregard

Respondent determined that, for 1994, Christopher and Brenda and Gregory and Linda (petitioners Cox) were liable for an accuracy-related penalty under section 6662(a) because their underpayments of tax for 1994 were due to negligence or disregard of rules or regulations. Although petitioners Cox contend that they are not liable for the accuracy-related penalty under section 6662, the only arguments they made in support of their position were that respondent erred in making his determination and that Christopher and Gregory had sufficient bases to allow them to deduct the NOLs claimed.

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code]". Sec. 6662(c); see Neely v. Commissioner, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonable and prudent person would do under the circumstances). The term "disregard" includes "any careless, reckless, or intentional disregard." Sec. 6662(c). Disregard of

rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. Disregard of rules or regulations is reckless if the taxpayer makes little or no effort to determine whether a rule or regulation exists. Id. Disregard of rules or regulations is intentional if the taxpayer knows of the rule or regulation that is disregarded. Id.

Section 6664(c)(1) provides, in pertinent part, that the section 6662(a) penalty shall not be imposed with respect to any portion of an underpayment if a taxpayer shows that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Reasonable cause and good faith may be indicated by an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b), Income Tax Regs.

We have concluded that Christopher may increase his basis in Cox Tomato by $148,000 to reflect the money he transferred to Cox Tomato from loan 91850.[11] Gregory, however, did not show that he is entitled to increase his adjusted basis in Cox Tomato. With respect to other adjustments proposed in the notices of

---

[11]Christopher may still have an underpayment because of his concessions regarding other adjustments.

deficiency, petitioners Cox did not introduce any evidence to show they made a reasonable effort to comply with the provisions of the Internal Revenue Code or to determine the correctness of their reporting positions, or that they had reasonable cause for their respective underpayments.

Because petitioners Cox failed to prove that the proposed deficiencies were not attributable to negligence or disregard of rules or regulations, and because they did not assert any other basis for obtaining relief from the section 6662(a) penalty, we sustain respondent's determinations that petitioners Cox are liable for the section 6662(a) penalty to the extent that the Rule 155 computations show they are liable for underpayments.

B.   Accuracy-Related Penalty for Substantial Understatement of Tax

Respondent determined that Deborah and her spouse (petitioners Burke) were liable for an accuracy-related penalty under section 6662(a) and (b)(2) for 1995 because the underpayment of tax was due to a substantial understatement of income tax.  Petitioners Burke contend that they are not liable for the penalty.

Section 6662(a) and (b)(2) imposes a penalty equal to 20 percent of the portion of an underpayment attributable to any substantial understatement of tax.  A substantial understatement occurs when the amount of the understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return or $5,000 ($10,000 for corporations).  Sec. 6662(d)(1).

The amount of an understatement on which the penalty is imposed will be reduced by the portion of the understatement that is attributable to (1) the tax treatment of an item that was supported by substantial authority or (2) any item for which the relevant facts affecting the item's tax treatment were "adequately disclosed in the return or in a statement attached to the return" and there was a reasonable basis for the tax treatment by the taxpayer. Sec. 6662(d)(2)(B)(I). Additionally, no penalty will be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1).

Respondent determined that the understatement to which the penalty applied was attributable to three items: (1) Deborah's failure to report as income $18,000 of distributions received from Cox Tomato; (2) Deborah's failure to report as income the annual lease value ($7,750) of the corporate automobile; and (3) Deborah's reported flowthrough loss from Cox Tomato of $12,000.

Petitioners Burke do not contend, nor have they proven, that they had substantial authority for the tax treatment of the items in question or that they adequately disclosed all relevant facts as to the tax treatment of those items. They also do not contend, nor have they proven, that they had a reasonable basis for their tax treatment of the items, or that they qualify for relief under section 6664(c). Consequently, petitioners Burke have failed to demonstrate that they are not liable for the

accuracy-related penalty for substantial understatement of income tax for 1995. Accordingly, we sustain respondent's determination.

IV. Conclusion

We hold that Christopher is entitled to increase his adjusted basis in Cox Tomato by $148,000, the amount he transferred to Cox Tomato in 1993. We also hold that, as to all other adjustments addressed in this opinion, respondent's determinations must be sustained.

We have carefully considered all remaining arguments made by the parties for contrary holdings and, to the extent not discussed, find them to be irrelevant or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.