T.C. Memo. 2003-343

UNITED STATES TAX COURT

HERSCHEL H. AND ROBERTA S. HOOPENGARNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 7986-00, 9423-01.       Filed December 17, 2003.

<u>James G. LeBloch</u>, for petitioners.

<u>Thomas J. Fernandez</u> and <u>Edwin Herrera</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in,
additions to, and penalties on petitioners Herschel and Roberta
Hoopengarner's (petitioners) income tax as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------|----------------------------------------|
| 1994 | $5,054 | -0- | $892 |
| 1995 | 8,413 | $234 | 906 |
| 1996 | 7,828 | -0- | 870 |
| 1997 | 34,289 | -0- | 6,858 |
| 1998 | 14,354 | -0- | 2,871 |
| 1999 | 8,974 | -0- | 1,795 |

The issues for decision are: (1) Whether petitioners are entitled to carry forward claimed net operating losses (NOLs) for 1994, 1995, 1996, 1997, 1998, and 1999; (2) whether petitioners are entitled to deduct claimed Schedule C expenses for 1994 and 1995; (3) whether petitioners are liable for an addition to tax pursuant to section 6651(a)(1)[1] for 1995; and (4) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for 1994, 1995, 1996, 1997, 1998, and 1999. These issues arise primarily from facts surrounding claimed net operating loss deductions that were allegedly generated when numerous banks foreclosed on five properties that petitioners had been developing for commercial use.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as in effect for the years in issue. All amounts are rounded to the nearest dollar.

incorporated herein by this reference. Petitioners were married in 1955. At the time they filed the petition, petitioners resided in Laguna Niguel, California.

A.   Petitioners' Work History

Petitioner-husband (petitioner) began work in the insurance business in 1957 or 1958 for Penn Mutual Insurance Co. (Penn Mutual). Except for 2 years with a different insurance company, petitioner was continuously employed by Penn Mutual until 1979. In or about 1960, petitioner opened a Penn Mutual agency in Orange County, California. Petitioner trained agents, and the agency grew to employ approximately 40-50 people. In 1979, petitioner earned approximately $75,000. In 1979 or 1980, petitioner sold the agency to focus on real estate development activities.

Beginning in 1955, petitioner-wife was employed as a school teacher. She retired from teaching when her husband's commercial real estate development activities became successful.

B.   Petitioner's Real Estate Development Activities

Petitioner entered into commercial real estate development beginning in 1963 or 1964. Initially, petitioner was successful with these activities. He sold his first building at a profit, and he was able to secure tenants, including his employer Penn Mutual, for the buildings.

In 1978, petitioners formed the H & H partnership with Grant

B. and Victoria T. Hornbeak under California law. The main purpose of the partnership was to acquire real property in Irvine, California, and to construct and rent a building on the site. Grant Hornbeak was the managing partner. Petitioners and the Hornbeaks each owned a 50-percent interest in the partnership and shared net profits and net losses equally. The agreement stated:

> The Managing Partner shall provide quarterly financial statements of the partnership's activities to each partner. In addition, the Managing Partner shall furnish each partner with a copy of the income tax return filed by the partnership * * *.

>     *       *       *       *       *       *       *

> All books, records and accounts of the partnership shall be open to inspection by all partners * * *.

Petitioner brought an asset base to the partnership so that the partnership could secure bank loans to construct the buildings. The bank loans were secured with some of petitioner's personal assets. Grant Hornbeak provided services for, and day-to-day management of, the partnership in return for monetary compensation.

The only return filed for the partnership (on March 12, 1984) was for the taxable year ending September 30, 1982.

On September 30, 1982, the partners dissolved the partnership. The partnership was unsuccessful due to historically high interest rates of approximately 20 percent.

C.  K-Mart Property

On December 26, 1980, petitioners, Grant Hornbeak, and others purchased real estate located in Las Vegas, Nevada, for $605,000 to construct a K-Mart.  On May 17, 1982, the property was transferred to the H & H partnership.  On August 10, 1982, a portion of the property was sold for $239,000.  Petitioner testified that he did not recall whether the proceeds from the sale were reinvested in the property for improvements.  On September 22, 1983, Grant Hornbeak transferred his interest in the property to petitioner for $127,500.

Between 1982 and 1984, loans were taken against the property in the amounts of $670,000, $5,800,000, and $995,000.

In 1985, the property was foreclosed upon.  The foreclosure proceeds totaled $6,606,398.

D.  Indio Property

H & H Land Development Corp. purchased the Indio property, located in Riverside County, California, for $1,590,000.  The purchase price was secured by three deeds of trust.  On August 1, 1980, and March 3, 1981, H & H Land Development Corp. recorded additional deeds of trust in the amounts of $1,227,912 and $221,000, respectively.

On February 9, 1982, H & H Land Development Corp. sold a portion of the property for $54,000.

In 1983, the property was foreclosed upon. The foreclosure proceeds totaled $2,063,113.

E.  Cowan Avenue Property

The Cowan Avenue property, located in Irvine, California, was initially owned by the H & H partnership. On October 19, 1978, petitioners and the Hornbeaks recorded a grant deed for a purchase price of $676,000. On August 30, 1979, a deed of trust was recorded securing a loan on the property in the amount of $745,000. On September 3, 1981, a collateral assignment of leases was recorded securing a debt in the amount of $2,850,000. Also on September 3, 1981, a deed of trust with assignment of rents was recorded to secure a debt of $942,500.

In 1982, the property was foreclosed upon. A trust deed of sale was recorded in satisfaction of the debt for $450,000 consideration received.

F.  Avenida Del Mar Property

On January 16, 1981, petitioner and Grant Hornbeak acquired the Avenida Del Mar property in San Clemente, California, for a purchase price of $540,000. Concurrently, a deed of trust was recorded securing a loan of $375,000. On March 17, 1981, petitioner and Grant Hornbeak obtained a loan of $600,000, secured by a deed of trust on the property. Concurrently, a deed of trust in full reconveyance by the Bank of San Clemente was recorded, which related to the property. On May 18, 1982, a

$550,000 loan was obtained, secured by a deed of trust on the property.

On January 27, 1982, a notice of default was recorded pertaining to the $375,000 loan. On June 17, 1982, a deed of trust was recorded securing a note of $900,000.

In 1984, the property was foreclosed upon.

G. Business Center Drive Property

On April 27, 1976, the property located at Business Center Drive, Irvine, California, was assigned to petitioner for $67,500 in consideration. On October 16, 1978, petitioner obtained a loan in the amount of $675,000. On June 26, 1979, a deed of trust was recorded, securing a loan in the amount of $100,000.

Allan Silverman, a business acquaintance of petitioner, took out a loan of $493,250 and gave the funds to petitioner to repay a different loan on the property. Allan Silverman's loan was partially secured by the Business Center Drive property. On October 5, 1990, according to the schedule prepared by Revenue Agent John Grennan regarding this property, petitioner transferred a 50-percent interest in the property to Allan Silverman. Petitioner collected the rents on the Irvine Business Center property and kept the money for himself instead of paying the bank or Allan Silverman on the loan.

In 1992, the property was foreclosed upon.

## H. Petitioners' Financial Difficulties

Petitioners lost personal assets (totaling approximately $2.5-$3 million), including their house, about the time when the foreclosures upon the K-Mart, Indio, Cowan Avenue, and Avenida Del Mar properties occurred. Petitioners' cars were not foreclosed upon. In 1988, petitioners moved to a rental house on Balboa Island, California. Petitioners were unable to afford the legal retainer fee to file for bankruptcy.

Petitioner-wife returned to teaching to supplement their income, earning approximately $25,000 per year. Petitioner returned to selling insurance. Petitioner earned approximately $35,000-$50,000 in 1984-85, but his income increased to $75,000 by 1990.

## I. Petitioners' Tax Returns

Petitioners timely filed tax returns for all years in issue, except taxable year 1995. For 1978 through 1999, respondent's records show that petitioners reported adjusted gross income as follows:

| Year[1] | Adjusted Gross Income |
|---------|----------------------|
| 1978 | $8,925 |
| 1979 | -13,427 |
| 1980 | -22,524 |
| 1981 | -2,095 |
| 1982 | -248,845 |
| 1983 | None reported on return |
| 1984 | -151,306 |
| 1985 | -240,661 |
| 1986 | -106,772 |
| 1988 | -0- |

| | |
|---|---|
| 1989 | -0- |
| 1990 | -820,198 |
| 1991 | -796,911 |
| 1992 | -787,394 |
| 1993 | -724,043 |
| 1994 | -678,567 |
| 1995 | -627,612 |
| 1996 | -575,790 |
| 1997 | -438,628 |
| 1998 | -365,005 |
| 1999 | -285,208 |

[1] For 1987, the parties provided no information as to whether or not a return was filed or as to the amount of taxable income or adjusted gross income.

J.   Respondent's Adjustments

On May 15, 2000, respondent issued a timely notice of deficiency for 1994, 1995, and 1996.  On April 27, 2001, respondent issued a timely notice of deficiency for 1997, 1998, and 1999.  Respondent made the following adjustments and determinations:

| Year | NOL Carryover Disallowed | Schedule C Expenses Disallowed | Other Adjustments[1] |
|---|---|---|---|
| 1994 | $724,043 | $9,950 | -$298 |
| 1995 | 678,567 | 6,100 | -431 |
| 1996 | 634,162 | -0- | -0- |
| 1997 | 580,720 | -0- | -0- |
| 1998 | 445,528 | -0- | 8,391 |
| 1999 | 364,635 | -0- | 1,909 |

[1]  The Other Adjustments include items such as "SE AGI Adjustment", "Social Security/RRB", and "Itemized Deductions."

OPINION

A.   Petitioners Have Not Substantiated the Claimed NOLs

Petitioners have not substantiated their claimed net operating losses.

Taxpayers are required to maintain adequate records to substantiate claimed losses, and taxpayers bear the burden of proving that they are entitled to claimed losses.  Sec. 6001; Rule 142(a);[2] Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioners, in deducting NOLs, bear the burden of establishing both the existence of the NOLs and the amount of any NOL that may be carried over to the subject years.   United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955); Keith v. Commissioner, 115 T.C. 605, 621 (2000); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).  Such a deduction is a matter of legislative grace; it is not a matter of right. United States v. Olympic Radio & Television, Inc., supra at 235; Deputy v. Du Pont, 308 U.S. 488, 493 (1940).

Section 172 allows a taxpayer to deduct an NOL for a taxable year.  The amount of the NOL deduction equals the sum of the NOL carryovers plus NOL carrybacks to that year.  Sec. 172(a). Absent an election to the contrary, an NOL for any taxable year

---

[2]  The parties agree that sec. 7491(a) is inapplicable in this case, as the examination began before the effective date of the statute.

must first be carried back 3 years and then carried over 15 years.[3]  Sec. 172(b)(1)(A), (2), and (3).  A taxpayer claiming an NOL deduction for a taxable year must file with his return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs.

1.   Petitioners' Tax Returns Do Not Substantiate the Claimed NOLs

A tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein.  Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). Petitioner's 1994 through 1999 individual returns do not, by themselves, substantiate the claimed NOLs.  Furthermore, petitioners did not provide the only tax return filed by the partnership (for the taxable year ending in 1982), and petitioners failed to provide their individual tax returns prior to 1992, which are the years in which the net operating losses were allegedly generated.  Nor have petitioners provided the Court with copies of tax returns filed by H & H Land Development Corp. for any taxable year.

---

[3]  For 1998 and 1999, NOLs must be carried back 2 years and then carried over 20 years.

2. Petitioner's Testimony Does Not Substantiate the Claimed NOLs

Petitioner relies on his own testimony to substantiate the claimed NOLs. We found petitioner's testimony to be general, vague, conclusory, and/or questionable in certain material respects. Under the circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations. See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner's testimony was vague and unclear as to how the loan proceeds contributed to improvements on the properties. Indeed, petitioners did not object to respondent's proposed finding of fact which stated that petitioner "collected the rents on the Irvine Business Center Property and kept the money for himself instead of paying the bank on the loan." Petitioner's testimony did not establish whether the loans incurred were recourse or nonrecourse. Petitioners offered no testimony or evidence as to depreciation claimed or deducted or "allowed and allowable" on the properties.

Furthermore, petitioners offered no explanation regarding how their adjusted gross income corresponded with losses incurred

when the properties were foreclosed upon. For example, in 1989, petitioners reported adjusted gross income of zero. In 1990, petitioners reported adjusted gross income of -$820,198. Petitioners contend that losses from foreclosures on the five properties created the net operating losses. Based on the stipulated facts in this case, however, four of the properties were foreclosed upon between 1982 and 1985, and the fifth property was not foreclosed upon until 1992. This is one of the many inconsistencies evident in petitioners' case.

Petitioners have failed to offer credible testimony to meet their burden of substantiation in this case.

3. <u>Petitioners Provided No Financial Records</u>

Petitioners failed to provide any financial documentation to substantiate the net operating losses. Petitioners did not produce books or records for the alleged loss years to substantiate the claimed losses. Petitioners provided no financial statements from the H & H partnership. Petitioner conceded that he does not have any records for the properties or the H & H partnership, as his partner Mr. Hornbeak retained all the records. Petitioner failed to obtain these records from Mr. Hornbeak. Petitioners provided no financial statements from H & H Land Development Corp. Petitioners provided no receipts as to losses on the property. Petitioners provided no information as

to costs incurred in buying or selling the properties, or in foreclosure expenses.

Petitioners' situation in this case is a result of their own inexactitude and failure to maintain records of their expenses. Further, we find petitioners' efforts before trial to locate any records that might be in the hands of third parties especially lax.

### 4.  Petitioners Failed To Call Key Witnesses

We note that neither Grant Hornbeak (petitioners' partner in the real estate transactions) nor anyone from Gendron & Co. (petitioner's accountant and preparer of the 1994 through 1999 tax returns) was called as witnesses.  We infer that their testimony would not have been favorable to petitioners.  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

### 5.  The Court Will Not Estimate Petitioners' Claimed NOLs

Despite the above mentioned discussion, petitioners argue that they have substantiated their claimed net operating losses for taxable years 1994 through 1999, based upon their alleged bases in the properties and losses from the foreclosures. Petitioners derived these numbers from property records gathered by Revenue Agent Grennan during the audit.  Petitioners argue that at the time of foreclosure, they had bases and losses in the properties as follows:

| Property | Basis | Loss |
|---|---|---|
| K-Mart | $6,963,500 | ($957,102) |
| Indio | 2,930,912 | (921,800) |
| Cowan Ave. | 3,526,000 | (226,000) |
| Business Center Dr. | 371,251 | (371,251) |

Petitioners make no argument regarding basis or loss for the Avenida Del Mar property.

If the taxpayer fails to keep adequate records but the Court is convinced that deductible expenditures were incurred, the Court may make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); Shea v. Commissioner, 112 T.C. 183, 187 (1999); see also Sandoval v. Commissioner, T.C. Memo. 2000-189 (we may estimate basis). However, there must exist some reasonable evidentiary basis upon which to make such an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Edwards v. Commissioner, T.C. Memo. 2002-169.

We are mindful that there must be sufficient evidence in the record to provide a basis for us to make an estimate and to conclude that a deductible expense was incurred in at least the amount to be allowed. Pratt v. Commissioner, T.C. Memo. 2002-279. We are not required to guess with respect to the amount of deductible expenses. Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. in part and revg. in part

T.C. Memo. 1989-390; Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioners have not shown a reasonable basis for concluding that the loans taken against the properties should be included as increases to basis. We are not convinced that the full amounts of the loans were paid into the construction projects. Given the circumstances of this case and the inexactitude apparent from petitioners' evidence, we have no reasonable evidentiary basis to make an approximation as to the amount of net operating losses. We could choose a raw percentage and apply that percentage to the total amount of the loans. However, our choice of a percentage would be mere guesswork with no reasonable evidentiary basis.

Petitioners dispute the computations and theory set forth by Revenue Agent John Grennan. In analyzing whether petitioners had substantiated their claimed NOLs, the Revenue Agent thought that petitioners might have had cancellation of indebtedness income when the foreclosures on the properties occurred. Due partially to the possibility of cancellation of indebtedness income, the net operating losses were not substantiated.

Petitioners argue that they did not have cancellation of indebtedness income because they were insolvent when the foreclosures occurred. Furthermore, since they did not have cancellation of indebtedness income, petitioners argue that they had net operating losses. While the Court is sympathetic to

petitioners' financial hardships, and assuming arguendo that petitioners did establish basis using the public property records, and did establish that they were insolvent,[4] petitioners are incorrect as a matter of law in stating that they had net operating losses. Federal law provides that, generally, a taxpayer must recognize income from the discharge of indebtedness. Sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). The Code provides an exception to the recognition of cancellation of indebtedness income in cases where the discharge occurs when the taxpayer is insolvent. See sec. 108(a)(1)(B); see also Babin v. Commissioner, 23 F.3d 1032, 1035 (6th Cir. 1994), affg. T.C. Memo. 1992-673. Section 108(b)(1) provides in turn that, upon discharge, the taxpayer must reduce certain tax attributes by the amount of the cancellation of indebtedness income excluded from gross income. Section 108(b)(2) provides that NOLs are the first tax attribute to be reduced,[5] and section 108(b)(3) provides that they be reduced dollar-for-dollar by the amount of the cancellation of indebtedness income excluded under section 108(a). Petitioners have not proven that they did not have cancellation of

---

[4] The Court makes no such findings.

[5] A taxpayer can elect to reduce the basis of any depreciable property by the amount of debt discharged before reducing the amount of any other tax attributes. Sec. 108(b)(5). Petitioners did not make such an election.

indebtedness income at the time of the foreclosures. Nor have they proven that any of the claimed NOLs were not reduced by section 108(b)(1) and (b)(2).

For the aforementioned reasons, petitioners did not substantiate their claimed net operating losses for the taxable years 1994, 1995, 1996, 1997, 1998, and 1999.

B.   Petitioners Failed To Address Claimed Schedule C Expenses

Petitioners reported income and expense for Insurance Service on Schedule C of the 1994 and 1995 tax returns. Respondent disallowed certain Schedule C expenses. Petitioners' briefs fail to address this issue. We conclude that petitioners have conceded the uncontested items and abandoned this issue. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

C.   Late-Filed Return for 1995

Respondent determined that petitioners are liable for an addition to tax pursuant to section 6651(a)(1) for 1995. Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect. The taxpayer has the burden of proving the addition is improper. See Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioners stipulated that they did not file their tax return for 1995 until October 21, 1996, the day on which respondent received the return. Petitioners offered no evidence showing that the failure to file was due to reasonable cause and not due to willful neglect. Accordingly, we hold that petitioners are liable for the addition to tax pursuant to section 6651(a)(1).

D.   Section 6662 Accuracy-Related Penalty

Section 6662 provides for an accuracy-related penalty equal to 20 percent of the underpayment if the underpayment was due to a taxpayer's negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). A taxpayer is negligent when he or she fails "'to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996) (quoting Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994), affg. in part, vacating and remanding in part T.C. Memo. 1993-124), affg. T.C. Memo. 1995-46.

As pertinent here, "negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A taxpayer may, however, avoid the application of the accuracy-related penalty by proving that he or she acted with reasonable

cause and in good faith.  See sec. 6664(c).  Whether a taxpayer acted with reasonable cause and in good faith is measured by examining the relevant facts and circumstances, and most importantly, the extent to which he or she attempted to assess the proper tax liability.  See Neely v. Commissioner, 85 T.C. 934 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners argue that they provided all relevant information to their tax return preparer, Gendron & Co. Petitioners, however, have provided no testimony concerning the information they gave to their return preparer.  No employee from Gendron & Co. testified at trial.  Additionally, we have found that petitioner failed to maintain adequate records related to the claimed net operating losses.  Therefore, we find the underpayment attributable to negligence or disregard of rules or regulations.

We conclude that petitioners are liable for a penalty pursuant to section 6662 for 1994, 1995, 1996, 1997, 1998, and 1999.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.