T.C. Memo. 2016-157

UNITED STATES TAX COURT

GREGORY A. POWER AND AMY S. POWER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21903-14.                    Filed August 22, 2016.

<u>William J. Sollmann</u>, for petitioners.

<u>Gary R. Shuler, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  In two separate notices of deficiency, respondent
determined deficiencies, additions to tax, and accuracy-related penalties as
follows:

[*2]                                    Gregory A. Power

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|---|
| 2007 | $110,566 | $26,791.50 | $22,113.20 |

Gregory A. Power and Amy S. Power

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|---|
| 2010 | $20,411 | $5,102.75 | $4,082.20 |
| 2011 | 18,434 | 4,608.50 | 3,686.80 |

After concessions,[1] the issues remaining for decision are: (1) whether Mr. Power incurred net operating losses (NOL) in the taxable years 1999-2002 which would be available as carryover NOL deductions against income for the taxable years 2007-11; (2) whether Mr. Power received distributions from his wholly owned subchapter S corporation in excess of his stock basis in the corporation for the taxable years 2007-11; and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the taxable years 2007, 2010, and 2011.

_____

[1]At trial on September 23, 2015, the parties filed a stipulation of settled issues in which petitioners concede various adjustments that respondent made in the notices of deficiency, including that (1) Mr. Power is liable for the addition to tax under sec. 6651(a)(1) for the taxable year 2007 and (2) petitioners are liable for the additions to tax under sec. 6651(a)(1) for the taxable years 2010 and 2011.

**[*3]** Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for all relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Ohio at the time their petition was filed.

Mr. Power is a commercial real estate broker, and Mrs. Power is a former school teacher. Mr. Power graduated from high school in 1972 and thereafter enrolled in a general business degree program at Miami University in the fall of 1972. In the summer of 1973 Mr. Power enrolled in the business studies program at the University of Cincinnati, but he left college after the spring semester of 1974 without completing a degree.

The State of Ohio and the Commonwealth of Kentucky issued Mr. Power real estate broker licenses on March 5, 1976, and December 10, 1980, respectively. Mr. Power has maintained both licenses since the respective dates of issuance.

**[*4]** <u>Power Realty Advisors</u>

In 1993 Mr. Power started his own real estate brokerage firm, Power Realty Advisors, Inc. (Power Realty).[2]  On February 2, 1993, Power Realty filed articles of incorporation with the Ohio secretary of state, and it elected to be treated as a subchapter S corporation on February 19, 1993.  Mr. Power is the sole shareholder of Power Realty.

On November 6, 2006, Power Realty leased an office suite on Montgomery Road in Cincinnati, Ohio.  In 2007 Power Realty had two employees and used Paychex as its third-party payroll provider.  Debbie Berger, a secretary who is not a certified public accountant (C.P.A.), kept and maintained the books and records for Power Realty.  In 2011 Power Realty let Ms. Berger go and downsized to a smaller office suite on Hosbrook Road in Cincinnati, Ohio.  For the taxable years 2007-11 Mr. Power maintained "Itemized Profit and Loss" and "Transactions by Account" documents for Power Realty.  Mr. Power has no formal training in tax or accounting.

---

[2]Mr. Power has been a licensed real estate broker for 40 years.  Before starting Power Realty in 1993, Mr. Power worked for Frederick Schmidt and Chelsea Moore, respectively, which are real estate firms in Cincinnati, Ohio.

[*5] Power Realty's Forms 1120S

Power Realty filed Forms 1120S, U.S. Income Tax Return for an S-Corporation, for the taxable years 1993-2011, which were prepared by either Attorney C. Christopher Muth or C.P.A. Andrew J. Bucher.[3] When Mr. Muth prepared returns, Mr. Power would typically provide him with one or two sheets of paper with handwritten income and expense categories and corresponding amounts. Mr. Power would provide underlying documentation to Mr. Muth "[o]ccasionally, but not very frequently." The record does not establish whether Mr. Power followed a similar protocol for tax returns that Mr. Bucher prepared. The following table is a summary of pertinent items reported on Power Realty's Forms 1120S for the taxable years 1993-2006:

| Date Filed | Year | Ordinary Income or Loss | Income Items | Property Distributions |
|---|---|---|---|---|
| --- | 1993 | ($56,552) | -0- | -0- |
| --- | 1994 | (38,376) | -0- | -0- |
| 5/19/00 | 1995 | (191,044) | -0- | -0- |
| 6/30/00 | 1996 | (70,325) | -0- | -0- |
| 8/18/00 | 1997 | (19,670) | -0- | -0- |
| 9/27/00 | 1998 | (23,783) | -0- | -0- |
| 5/19/00 | 1999 | (18,056) | -0- | -0- |
| 1/4/02 | 2000 | (21,760) | -0- | -0- |

[3]Mr. Muth prepared Power Realty's Forms 1120S for the taxable years 1993-2006 and 2010-11 and amended Forms 1120S for the taxable years 2008-09. Mr. Bucher prepared Power Realty's Forms 1120S for the taxable years 2007-09 and amended Form 1120S for the taxable year 2007.

| | | | | | |
|---|---|---|---|---|---|
| **[\*6]** | 3/26/03 | 2001 | (9,840) | -0- | -0- |
| | 10/6/03 | 2002 | (99,813) | -0- | -0- |
| | 9/20/04 | 2003 | 218,409 | -0- | -0- |
| | 9/19/05 | 2004 | 19,210 | -0- | -0- |
| | 10/16/06 | 2005 | 193,849 | -0- | $150,000 |
| | 9/17/07 | 2006 | 487,266 | $21,673 | 200,000 |

On its Form 1120S for the taxable year 2007 (i.e., the first taxable year in issue), Power Realty reported on its NOL worksheet NOL carryovers as follows:

| Year | NOL |
|---|---|
| 1999 | $33,535 |
| 2000 | 138,685 |
| 2001 | 128,623 |
| 2002 | 217,245 |
| Total | 518,088 |

Power Realty compensated Mr. Power through distributions rather than wages or salary. However, Power Realty did not report any distributions to Mr. Power on its Forms 1120S for the taxable years 2007-11. Mr. Power used funds from Power Realty to pay personal living expenses of petitioners for each of the taxable years 2007-11. Furthermore, during the taxable years 2007-11 Power Realty claimed deductions on its Forms 1120S for certain personal living expenses of Mr. Power.

In 1986 Mr. Power purchased a three-bedroom, three-bathroom ranch on North Clippenger Drive in Cincinnati, Ohio (Clippenger residence), for $256,000. On July 30, 2007, Mr. Power wired $1,115,026 from two certificates of deposit

[*7] (CDs) at U.S. Bank to National City Bank for the purchase of real property at Tudor Hill Estates in Indian Hill, Ohio (Indian Hill property). Mr. Power requested that the balance of the CDs ($39,725.75) be transferred to Power Realty's bank account. Petitioners purchased the Indian Hill property using the money wired from U.S. Bank and $100,000 from Power Realty. In 2008 petitioners moved out of the Clippenger residence. Petitioners rented the Clippenger residence for 2010 and the first seven months of 2011 before selling it in 2012.

Petitioners' Tax Returns

Mr. Power filed Forms 1040, U.S. Individual Income Tax Return, for the taxable years 1994-2003 claiming single status. Petitioners were married on February 14, 2004, and Mr. Power claimed married filing separately status on his Forms 1040 for the taxable years 2004-09. Petitioners jointly filed their 2010 and 2011 Forms 1040.

Either Mr. Muth or Mr. Bucher prepared Mr. Power's tax returns for the taxable years 1993-2009 and petitioners' tax returns for the taxable years 2010-11.[4] After the incorporation of Power Realty in 1993, Mr. Muth advised Mr.

---

[4]Mr. Muth prepared (1) Mr. Power's Forms 1040 for the taxable years 1994-2000 and 2002-06; (2) Mr. Power's Forms 1040X, Amended U.S. Individual
(continued...)

[*8] Power that all income and expenses from Power Realty had to be reported on Forms 1120S and that the resulting net income or loss would "flow through" to Mr. Power's individual tax return. Despite this advice, and for reasons unclear from the record, Mr. Power split the income and expenses of Power Realty between Schedules C, Profit or Loss From Business, attached to Forms 1040 and Forms 1120S. The following table is a summary of the adjusted gross income and Schedule C income/loss on Mr. Power's Forms 1040 for the taxable years 1993-2009:

| Date Filed | Year | Adjusted Gross Income | Schedule C Income/Loss |
|---|---|---|---|
| 10/17/94 | 1993 | ($21,405) | $83,786 |
| 10/18/95 | 1994 | 40,170 | [1]76,831 |
| 7/26/00 | 1995 | 28,507 | (114,822) |
| 10/31/03 | 1996 | (136,862) | (108,994) |
| 12/31/03 | 1997 | (298,881) | (115,791) |
| 12/31/03 | 1998 | (439,929) | (110,865) |
| 1/21/04 | 1999 | (547,830) | (116,863) |
| 2/8/04 | 2000 | (685,360) | (117,931) |
| 1/28/04 | [2]2001 | (724,882) | (118,783) |
| 4/27/04 | 2002 | (1,059,417) | (117,432) |
| 9/30/04 | 2003 | (978,336) | (137,328) |
| 9/28/05 | 2004 | (1,023,334) | 4,859 |
| 10/18/06 | 2005 | (863,030) | (19,335) |

---

[4](...continued)
Income Tax Return, for the taxable years 2001 and 2008; and (3) petitioners' Forms 1040 for the taxable years 2010-11. Mr. Bucher prepared (1) Mr. Power's Forms 1040 for the taxable years 2007-09 and (2) Mr. Power's Form 1040X for the taxable year 2007. It is unclear from the record who prepared Mr. Power's Form 1040 for the taxable year 2001.

[*9]

| | | | |
|---|---|---|---|
| 9/17/07 | 2006 | (429,738) | (3,796) |
| 5/9/11 | 2007 | (358,913) | (993) |
| 5/9/11 | 2008 | (433,183) | (30,935) |
| 5/9/11 | 2009 | (361,673) | (26,913) |

[1]The parties have stipulated the above-referenced dates and amounts. However, there appear to be inconsistencies between certain stipulated amounts and the amounts reported on the corresponding tax returns. We have corrected these discrepancies to comport with the underlying exhibits.

[2]On May 8, 2006, respondent received from Mr. Power a Form 1040X for the taxable year 2001, which was signed by Mr. Muth as the tax return preparer.

Respondent received from Power Realty an amended Form 1120S for the taxable year 2007 on June 1, 2012, and amended Forms 1120S for the taxable years 2008 and 2009 on August 16, 2012. Because respondent received the amended Forms 1120S during the examination process, he did not process them. On the amended Forms 1120S for the taxable years 2007-09 Mr. Power removed the previously claimed deductions for personal expenses.

Respondent received from Mr. Power Forms 1040X for the taxable years 2007 and 2008 on June 1 and August 16, 2012, respectively.[5] On the amended returns for 2007 and 2008 Mr. Power removed all items previously reported on Schedules C. However, because respondent received the 2007 and 2008 amended

[5]Mr. Bucher signed the 2007 amended return as the tax return preparer, and Mr. Muth signed the 2008 amended return.

**[\*10]** returns during the examination of Mr. Power's and petitioners' returns, respondent did not process either Form 1040X.

On June 16, 2014, respondent issued petitioners two separate notices of deficiency. The first was issued to Mr. Power individually for the taxable year 2007, and the second was issued to petitioners jointly for the taxable years 2010 and 2011. Petitioners timely filed a petition disputing respondent's determinations in the notices of deficiency.

OPINION

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that those determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer is required to maintain records sufficient to enable the Commissioner to determine his or her correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Pursuant to section 7491(a)(1), the burden of proof with respect to relevant factual issues may shift to the Commissioner. Specifically, section 7491(a)(1) provides: "If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." Section

[*11] 7491(a)(2) further provides that the burden of proof shifts to the Commissioner only when the taxpayer has: (1) "complied with the requirements under this title to substantiate any item" and (2) "maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". "Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted". Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995). Petitioners did not retain records to comply with the Code's substantiation requirements or provide credible evidence. Therefore we hold that section 7491(a) does not apply to shift the burden of proof to respondent.

1. Net Operating Loss

The first issue for decision is whether Mr. Power incurred NOLs in the taxable years 1999-2002 that gave rise to a $518,088 NOL carryover, which was subsequently available to offset his gross income beginning in the taxable year 2007. In the notice of deficiency issued to Mr. Power individually, respondent disallowed in its entirety Mr. Power's claimed $518,088 NOL carryover deduction to the taxable year 2007.

**[*12]** Section 172 allows a taxpayer to deduct an NOL for a taxable year. The

amount of the deduction equals the aggregate of the NOL carrybacks and

carryovers to the taxable year. Sec. 172(a). Section 172(c) defines an NOL as the

excess of deductions over gross income, computed with certain modifications

specified in section 172(d). Absent an election under section 172(b)(3),[6] an NOL

for any taxable year must first be carried back 2 years and then carried over 20

years.[7] Sec. 172(b)(1)(A), (2), (3).

---

[6]Sec. 172(b)(3) provides:

> (3) Election to waive carryback.--Any taxpayer entitled to a
> carryback period under paragraph (1) may elect to relinquish the
> entire carryback period with respect to a net operating loss for any
> taxable year. Such election shall be made in such manner as may be
> prescribed by the Secretary, and shall be made by the due date
> (including extensions of time) for filing the taxpayer's return for the
> taxable year of the net operating loss for which the election is to be in
> effect. Such election, once made for any taxable year, shall be
> irrevocable for such taxable year.

Although it is inconsequential to our decision, the record does not indicate that
Mr. Power made such an election.

[7]In 1997 sec. 172(b)(1)(A) was amended to generally require a 2-year
carryback and a 20-year carryover for NOLs incurred in taxable years beginning
after August 5, 1997. See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec.
1082, 111 Stat. at 950. Before this amendment sec. 172(b)(1)(A) generally
required a 3-year carryback and a 15-year carryover. NOLs and the carryback and
carryover thereof are determined pursuant to the law applicable to the year in
which the losses occurred without regard to other years to which losses are carried

(continued...)

**[\*13]** Petitioners bear the burden of establishing both the existence of NOLs and the amounts of the losses that may be carried over to the taxable years 2007-11. See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000). An NOL deduction is a matter of legislative grace; it is not a right. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955).

Petitioners' argument, as we understand it, is that Mr. Power and Power Realty incurred NOLs totaling $518,088 in the taxable years 1999-2002, which were available to offset Mr. Power's income beginning with the taxable year 2007. Petitioners acknowledge the "absence of sufficient records" to substantiate their claimed NOL carryover to the taxable years 2007-11; however, petitioners contend that they "have reconstructed a reasonable loss carryover scenario in a situation where the actual books and records * * * [are] not available to fully substantiate the claimed net operating losses".

Petitioners must prove not only that Mr. Power incurred NOLs in 1999-2002 but also that the NOLs were not absorbed during the period beginning with 1997 (the earliest carryback year) and ending with 2006 (the last year before the

---

[7](...continued)
back or forward. Sec. 1.172-1(e)(1) and (2), Income Tax Regs. Because petitioners argue that the NOL carryovers at issue were generated from 1999-2002, we will apply sec. 172(b)(1)(A) as amended in 1997.

[*14] first taxable year in issue). To meet this burden petitioners must introduce convincing evidence that Mr. Power incurred NOLs in the taxable years 1999-2002 and also prove Mr. Power's taxable income for the period beginning with 1997 and ending with 2006. See, e.g., Leitgen v. Commissioner, T.C. Memo. 1981-525, aff'd without published opinion, 691 F.2d 504 (8th Cir. 1982). Petitioners introduced as evidence: (1) copies of Forms 1040 for the taxable years 1994-2000 and 2002-11; (2) copies of Forms 1040X for the taxable years 2001, 2007, and 2008; (3) copies of Power Realty's Forms 1120S for the taxable years 1993-2011; and (4) copies of Power Realty's amended Forms 1120S for the taxable years 2007-09. From these tax returns petitioners argue that the Court can apply the Cohan rule to estimate the NOL carryovers to the taxable years 2007-11.

Under the Cohan rule, if a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, the Court may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his or her own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, to apply the Cohan rule the Court must have some information to estimate the proper deduction. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Petitioners have provided no testimony or other evidence sufficient to enable us to make a reasonable estimate of the purported NOLs. Petitioners did

[*15] not introduce books, records, bills, or receipts to establish the income and expenses of Power Realty for 1999-2002 or any other taxable year. To substantiate the claimed NOLs petitioners rely exclusively on copies of tax returns, and it is well settled that tax returns alone do not establish that a taxpayer suffered a loss. See Lehman v. Commissioner, T.C. Memo. 2010-74, 2010 Tax Ct. Memo LEXIS 76, at *5.

The record before us does not establish that Mr. Power incurred NOLs for 1999-2002 or any other taxable years preceding the taxable year 2007. Furthermore, copies of tax returns are insufficient by themselves to prove that the purported NOLs were not completely absorbed before the taxable years in issue. See id., 2010 Tax Ct. Memo LEXIS 76, at *5-*6 (citing Stutsman v. Commissioner, T.C. Memo. 1961-109); see also Hoopengarner v. Commissioner, T.C. Memo. 2003-343, 2003 Tax Ct. Memo LEXIS 344, at *13. Without additional evidence (e.g., books, records, bills, and receipts) this is not a case in which the application of the Cohan rule would be appropriate. Accordingly, we sustain respondent's disallowance of Mr. Power's claimed NOL carryover

[*16] deductions because petitioners failed to prove facts showing that they are entitled to those deductions.[8]

2. Mr. Power's Stock Basis in Power Realty

The second issue for decision is whether Mr. Power received distributions from Power Realty in excess of his adjusted stock basis in the S corporation. In the notices of deficiency respondent determined, inter alia, that Power Realty made distributions to Mr. Power of $359,860 for 2007; $60,173 for 2008; $221,829 for 2010; and $189,447 for 2011. Respondent also determined that Mr. Power had a zero[9] stock basis in Power Realty as of January 1, 2007. Petitioners contend that there was no distribution from Power Realty in excess of Mr. Power's adjusted stock basis in the S corporation. Specifically, petitioners contend that Mr. Power had a basis in Power Realty of $510,216 in 2007 and that no

---

[8]As a result of respondent's adjustments in the notice of deficiency for the taxable year 2009, a $9,885 NOL was generated and carried over into the taxable year 2010.

[9]Respondent computed Mr. Power's stock basis in Power Realty as of January 1, 2007, as follows: (1) ordinary income of $338,408; plus (2) ordinary dividends of $33,079; equals (3) a stock basis of $371,487 before distributions; minus (4) distributions of $359,860; equals (5) stock basis of $11,627 before non-deductible expenses and depletion; minus (6) nondeductible expenses of $11,418; equals (7) stock basis of $209 before allowable losses and deductions; minus (8) sec. 179 deduction of $8,006 and charitable contribution deduction of $11,686; equals (9) a stock basis of zero.

**[*17]** distributions in excess of that basis were made to Mr. Power from Power Realty for any of the taxable years 2007-11.

Section 1366(a)(1) provides that an S corporation shareholder determines his or her tax liability by taking into account his or her pro rata share of the S corporation's income, losses, deductions, or credits for the S corporation's taxable year ending with or in the shareholder's taxable year. The shareholder may not take into account, however, S corporation losses and deductions for any taxable year in excess of the shareholder's adjusted basis in the S corporation's stock and debt. Sec. 1366(d)(1). Generally, section 1368(b) provides that distributions from an S corporation with no accumulated earnings and profits are not included in the gross income of the shareholder to the extent that they do not exceed the adjusted basis of the shareholder's stock, and any excess of adjusted basis is treated as gain from the sale or exchange of property. Section 1367 provides that basis in S corporation stock is increased by income passed through to the shareholder under section 1366(a)(1) and decreased by, inter alia, distributions not includable in the shareholder's income pursuant to section 1368.

A shareholder may increase his or her basis in an S corporation if he or she makes an economic outlay to or for the benefit of the S corporation. Goatcher v. United States, 944 F.2d 747, 751 (10th Cir. 1991); Estate of Leavitt v.

[*18] Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), aff'g 90 T.C. 206 (1988). An economic outlay for this purpose is an actual contribution of cash or property by the shareholder to the S corporation or a transaction that leaves the S corporation indebted to the shareholder. Sec. 1366(d)(1). A taxpayer must establish that he has acquired basis in the referenced stock and, to the extent that he does, that his basis was not reduced to zero because of losses claimed in years predating the subject year. Arnold v. Commissioner, T.C. Memo. 2003-259, 2003 Tax Ct. Memo LEXIS 258, at *8; Hogan v. Commissioner, T.C. Memo. 1999-365, 1999 Tax Ct. Memo LEXIS 420, at *7. A taxpayer who fails to prove that he or she has any basis in an S corporation is considered to have a zero basis in that corporation. Thomson v. Commissioner, T.C. Memo. 1983-279, aff'd without published opinion, 731 F.2d 889 (11th Cir. 1984). Thus, petitioners bear the burden of proving that Mr. Power had sufficient basis in Power Realty.

Mr. Power did not maintain a basis schedule for his Power Realty stock. To establish Mr. Power's basis in his Power Realty stock, petitioners offered Power Realty's Forms 1120S for the taxable years 1993-2011 and a reconstructed stock basis chart attached as an appendix to their posttrial brief. To begin with, the Forms 1120S do not include sufficient information for us to establish Mr. Power's basis in Power Realty. See Fehlhaber v. Commissioner, 94 T.C. 863, 869 (1990),

[*19] aff'd, 954 F.2d 653 (11th Cir. 1992). It is also unclear how petitioners calculated Mr. Power's stock basis in Power Realty using Forms 1120S given that Power Realty's income and expenses were improperly divided between Mr. Power's Schedules C and Power Realty's Forms 1120S. Further, petitioners stipulate that Mr. Power was compensated by Power Realty through distributions (not wages or salary) and that petitioners used Power Realty's checking account to pay substantial personal expenses during the taxable years 2007-11. On the basis of the record before us, petitioners have not established that Mr. Power had basis in Power Realty stock or that he did not receive distributions from Power Realty as respondent determined in the notices of deficiency. Accordingly, we conclude that Mr. Power's adjusted stock basis in Power Realty was zero and that he received distributions from Power Realty as respondent determined in the notices of deficiency.

3. Miscellaneous Issues

In the notices of deficiency respondent made various adjustments to income and expenses affecting Mr. Power's and petitioners' taxable income for the taxable years 2007-11. At trial on September 23, 2015, the parties filed with the Court a stipulation of settled issues in which petitioners agreed to most of respondent's adjustments in the notices of deficiency. However, certain issues remained

[*20] unresolved after the filing of the stipulation of settled issues, including:

(1) adjustments to deductions claimed on Schedules A, Itemized Deductions, for

the taxable years 2007-11 and (2) adjustments to personal exemptions for the

taxable years 2007, 2009, and 2010. Petitioners provided no evidence or argument

concerning these remaining issues. Consequently, petitioners are deemed to have

conceded these issues pursuant to Rule 34(b)(4).[10] To the extent that these

adjustments are dependent upon our decisions above--and thus are computational--

they are to be resolved in the parties' Rule 155 computations.

## 4. Accuracy-Related Penalties

In separate notices of deficiency, respondent determined that Mr. Power (for

the taxable year 2007) and petitioners (for the taxable years 2010 and 2011) are

liable for accuracy-related penalties pursuant to section 6662(a) and (b)(1) and (2)

for negligence or substantial understatements of income tax. Respondent bears the

burden of production with respect to these penalties. See sec. 7491(c). To meet

---

[10]In the notice of deficiency respondent indicates that petitioners' taxable income on their filed 2010 return is "0.00" and adjusts this number upward by "111,593.00", resulting in a revised taxable income of "111,593.00". It appears that the taxable income reported on petitioners' filed Form 1040 for the taxable year 2010 is -$270,633 and, thus, the $111,593 upward adjustment should be made from this amount. However, petitioners made no argument concerning this apparent discrepancy. To the extent that this is in fact an error, it should be resolved by the parties in their Rule 155 computations.

[*21] this burden, respondent must produce evidence establishing that it is appropriate to impose the penalties. Once respondent has done so, the burden of proof is on petitioners to show that the penalties do not apply. See Higbee v. Commissioner, 116 T.C. at 449.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Mr. Power individually, and petitioners jointly, exhibited a lack of due care in failing to accurately report income and properly substantiate expenses for the taxable years 2007-11. The record establishes that petitioners used funds from Power Realty for personal expenses and did not retain records pertinent to the taxable years 2007-11. Furthermore, Mr. Power did not supply his tax return preparer (Mr. Muth) with adequate information or underlying documentation to prepare personal or corporate tax returns and inexplicably ignored Mr. Muth's advice to report all

**[*22]** activity of Power Realty on Forms 1120S. Respondent has met his burden of production with respect to the section 6662(a) penalties for negligence.

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Petitioners argue that they relied in good faith on tax return preparers to prepare accurate income tax returns. However, the record indicates that petitioners provided Mr. Muth with insufficient information to prepare their personal and corporate tax returns and ignored certain of Mr. Muth's advice. Accordingly, we hold that Mr. Power (for 2007) and petitioners (for 2010 and 2011) are liable for the section 6662(a) penalties for negligence.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.